No. 67,793

ANTHONY BYER DAVIS, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant.*

(843 P.2d 260)

Opinion filed December 11, 1992.

*James G. Keller*, legal services bureau, Kansas Department of Revenue, argued the cause and was on the briefs for appellant.

*John Ivan*, of the Law Offices of John Ivan, of Shawnee Mission, argued the cause, and *Jennifer L. Legg*, of the same firm, was with him on the brief for appellee.

*James W. Clark*, executive director, was on the brief for *amicus curiae* Kansas County & District Attorneys Association.

The opinion of the court was delivered by

SIX, J.: This driver's license suspension case concerns a sobriety checkpoint vehicle stop. The first impression single issue is whether a Kansas statute authorizing such a stop is a prerequisite to the stop's validity?

Anthony Byer Davis, who was stopped at a sobriety checkpoint, refused a breath test. His driving privileges were administratively suspended for one year under K.S.A. 8-1001, *et seq.* (the "implied consent" statute).

Davis sought judicial review of the suspension. The district court vacated the suspension, reasoning that specific legislative

authorization is a prerequisite to a valid stop. The Kansas Department of Revenue (KDR) appeals.

Our jurisdiction arises from the grant of a motion to transfer from the Court of Appeals under K.S.A. 20-3017 and Rule 8.02 (1992 Kan. Ct. R. Annot. 40).

The standard of review is unlimited because the issue involves the selection, interpretation, and application of a question of law. See *Gillespie v. Seymour*, 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1992).

We find the sobriety checkpoint stop lawful and reverse the trial court. Specific legislative authorization is not a prerequisite to the validity of sobriety checkpoint stops.

## Facts

A sobriety checkpoint was conducted in April 1991, in Leawood, Kansas, between 11:00 p.m. and 2:00 a.m., as a joint effort of the police, the sheriff, and the highway patrol. The checkpoint was established according to the factors announced in *State v. Deskins*, 234 Kan. 529, 541, 673 P.2d 1174 (1983) (the checkpoint in the present case also complied with the guidelines of an attorney general opinion and a department of transportation manual). Supervisors from the sheriff's office observed the operation to ensure safety and compliance with the *Deskins* factors.

Police officers stopped 255 motorists. Seven DUI arrests were made. Six alcohol breathalyzer tests were administered and two refusals occurred (including that of Davis). The average detention time for motorists who were not held further for testing was 30.9 seconds.

At trial, Davis confirmed that he and his friend had split a "couple of pitchers of beer" about an hour before the stop. Although the trial judge held the stop invalid, he determined that the checkpoint satisified the *Deskins* factors and "was properly conducted . . . so as to preclude the exercise of unbridled discretion by the officers involved."

## Is Specific Statutory Authority Required To Stop A Vehicle At A Sobriety Checkpoint?

The trial judge began his analysis of the statutory prerequisite issue by noting that "[t]he stop of a motorist at a DUI checkpoint must be both authorized by the legislature and conducted in a

constitutional manner." He concluded that there was no constitutional infirmity with respect to the conduct of the DUI checkpoint.

The stop of Davis' car was determined to be unlawful because there is no specific statutory authority in Kansas authorizing sobriety checkpoint stops. The trial judge characterized the issue as one of first impression in Kansas; consequently, three cases from other states were relied upon to craft his decision: *Nelson v. Lane*, 304 Or. 97, 743 P.2d 692 (1987); *Comm. v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987); and *Pimental v. Department of Transportation*, 561 A.2d 1348 (R.I. 1989).

The three sister state decisions are not controlling on the case at bar. In *Pimental*, a divided Rhode Island Supreme Court held that DUI checkpoints operate without probable cause or reasonable suspicion and, even if valid under the federal Constitution, violate the Rhode Island Constitution.

We have reasoned that the Kansas Constitution Bill of Rights § 15 provides the same protection as the Fourth Amendment to the United States Constitution. *State v. Wood*, 190 Kan. 778, 788, 378 P.2d 536 (1963).

The *Pimental* court observed that states supporting the constitutionality of roadblocks usually find that drunk driving problems outweigh privacy interests, citing *Deskins*. However, the court held the Rhode Island constitution grants greater protection from searches and seizures of this nature. 561 A.2d at 1352-53. The dissent in *Pimental* endorsed the *Deskins* rationale that checkpoint regulation, with strict standards, can properly balance the interests of public welfare against the individual's constitutionally mandated right to privacy. 561 A.2d at 1353-55.

In *Tarbert*, the second case cited by the trial judge, a divided Pennsylvania court determined that sobriety checkpoints were prohibited by a statute then in effect which permitted police officers to stop motorists only when they had articulable and reasonable grounds to suspect a violation of motor vehicle laws. The legislative background of the Pennsylvania vehicular stop statute may, in part, explain *Tarbert*'s conclusion that the statute was a limitation upon police authority. The Pennsylvania statute in question did not originate as a codification of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The statutory

basis for the *Tarbert* decision is not applicable in the case at bar. Chief Justice Nix, in *Tarbert,* implied that in the absence of Pennsylvania's legislative activity, the checkpoint would probably have been upheld, based upon "the full [panoply] of police power . . . available." 517 Pa. at 296-97, n.2.

*Nelson,* the third case relied on by the trial judge, was resolved by interpreting the Oregon Constitution. Chief Justice Peterson dissented, citing *Deskins* and arguing that proper restrictions could adequately protect the public's right to privacy. 304 Or. at 112, 118-19, 128-29. *Nelson* is a civil case, in which the plaintiff sought damages against the law enforcement officers who conducted a sobriety checkpoint. The plaintiff in *Nelson* was stopped but not arrested. The Oregon court was forced to rationalize its holding in *Nelson* with its prior holding in *State v. Tourtillott,* 289 Or. 845, 618 P.2d 423 (1980), *cert. denied* 451 U.S. 972 (1981). *Tourtillott* upheld game law violation checkpoint stops absent authorizing statutes. The *Tourtillott* court declined to determine the unraised question of whether the absence of an authorizing statute prohibited the use of checkpoint stops.

We do not find the triad of authorities relied on by the trial court persuasive.

### *Deskins* and *Sitz,* The Controlling Cases

Two cases resolve the issue before us. In *State v. Deskins,* 234 Kan. 529, we determined that sobriety checkpoints could be constitutional under the United States Constitution Fourth Amendment and the Kansas Constitution Bill of Rights § 15. Thirteen factors were found relevant in balancing State interests against intrusion upon individual rights. The *Deskins* factors were followed in the case at bar.

The United States Supreme Court in *Michigan State Police Dept. v. Sitz,* 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990), resolved the question of the constitutionality of sobriety checkpoints under the Fourth Amendment. The *Sitz* court held that Michigan's interest in preventing drunken driving outweighs the degree of intrusion on the individual motorists who are briefly stopped. 496 U.S. at 455. *Sitz* recognized a distinction between a *Terry* stop and a systematic roadside checkpoint stop. Such a checkpoint stop was found to be constitutional and falls outside

the *Terry* analysis. *Sitz* rests on a branch of Fourth Amendment jurisprudence in which the Court employs a balancing test to evaluate the constitutionality of various police stop situations. See, *e.g., Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979) (conviction under Texas law of defendant who refused to identify himself when stopped by the police violated the Fourth Amendment because the officer lacked reasonable suspicion of criminal activity); *United States v. Martinez-Fuerte,* 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976) (upholding checkpoints for detecting illegal aliens).

The trial judge in the case at bar analyzed Kansas statutory authority for a checkpoint stop. K.S.A. 1991 Supp. 22-2402(1) was advanced as the controlling statute.

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

The trial judge characterized K.S.A. 1991 Supp. 22-2402(1) as an exclusionary rule.

K.S.A. 1991 Supp. 22-2402 is "commonly referred to as the stop and frisk statute." *State v. Hamilton,* 222 Kan. 341, 344, 564 P.2d 536 (1977). We have stated that the statute is a codification of *Terry v. Ohio. State v. McKeown,* 249 Kan. 506, 508-09, 819 P.2d 644 (1991).

The fact that evidence may be suppressed when the statute is applicable and is violated does not compel a determination that the statute applies in all stop situations. In the case at bar, the statute is not applicable. "Stop and frisk" statutes were enacted to apply to situations where individual motorists are stopped based upon a particularized reasonable suspicion of criminal activity. Roadblock stops according to a plan embodying explicit, neutral limitations on the conduct of individual officers are in a separate category. The initial inquiry should be, "Does the statute apply?" If the stop and frisk statute does not apply, then any exclusionary effect, with regard to violations of that statute, is irrelevant.

The stop and frisk statute provides objective guidance for the determination of the constitutionality of police conduct within the context of the investigatory stop and frisk. The history of the

statute neither supports a claim that it governs all types of police contact with citizens nor a claim that it functions as a general exclusionary rule. We reason that all specifics of police enforcement methods need not be legislated.

Davis misreads two cases as supporting his exclusionary rule view. *State v. McKeown,* 249 Kan. at 514, and *State v. Kirby,* 12 Kan. App. 2d 346, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988). Neither *McKeown* nor *Kirby* supports Davis' claim. *Kirby* discusses K.S.A. 22-2402 as a codification of the *Terry* "stop and frisk" standard. 12 Kan. App. 2d at 352. *Kirby* involved the probable cause stop of an individual driving a truck and the subsequent search of that truck. *McKeown* recited the *Kirby* analysis and concluded that substantial evidence supported the trial court's suppression of evidence obtained as a result of an auto stop search. 249 Kan. at 514. Like *Kirby, McKeown* involved the stop of a specific pickup truck, not a random stop at a *Deskins* roadside checkpoint.

KDR argues that *State v. Garcia & Bell,* 210 Kan. 806, 504 P.2d 172 (1972), a parking meter theft case, controls the case at bar. The police in *Garcia & Bell,* after observing suspicious activity around some parking meters, stopped the suspects and ultimately searched a car which was at the scene. Garcia and Bell claimed that the evidence obtained was the result of an illegal search and seizure. We reasoned: "[O]ur own statute [K.S.A. 1971 Supp. 22-2501] was intended only to furnish guidelines to officers and courts as to one method of making a valid, warrantless search. We hold that it does not prohibit other warrantless searches which comport with the constitutional requirement of reasonableness." 210 Kan. at 811.

*Garcia & Bell* teaches that legislation in one area concerning warrantless searches does not act to forbid all other types of search activity. Interpretation of K.S.A. 1991 Supp. 22-2402(1), as a general exclusionary rule, goes beyond the plain meaning of the statute and is contrary to the interpretive approach expressed in *Garcia & Bell.*

Other jurisdictions have upheld the validity of checkpoint stops in the absence of explicit statutory authority. *Ingersoll v. Palmer,* 43 Cal. 3d 1321, 241 Cal. Rptr. 42, 743 P.2d 1299 (1987); *Orr v. People,* 803 P.2d 509, 512 (Colo. 1990); *People v. Estrada,* 68

Ill. App. 3d 272, 386 N.E.2d 128, *cert. denied* 444 U.S. 968 (1979).

Sobriety checkpoints are an exercise of generally authorized police powers. The DUI checkpoint cases represent another line of warrantless stops which can take place in accordance with the enforcement of DUI legislation. *Deskins* was decided in 1983. The legislature has had ample opportunity, if it so desired, to either alter *Deskins* by establishing the prerequisite of specific statutory authority or to prohibit sobriety checkpoint use. (We note legislative action on: [1] vehicle mechanical condition "spot inspection" by the Kansas Highway Patrol, K.S.A. 8-1759 and [2] vehicle stops by uniformed highway patrol members for safety as well as equipment compliance, K.S.A. 8-1759a.)

Reversed. The driving privilege suspension order is reinstated.