No. 68,227

STATE OF KANSAS, *Appellant*, v. JAMES MACDONALD, *Appellee*.

(856 P.2d 116)

Opinion filed July 9, 1993.

*Thomas R. Stanton*, assistant county attorney, argued the cause, and *Julie McKenna*, county attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellant.

*Benjamin C. Wood*, special assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This traffic checklane search and seizure case is before us on an interlocutory appeal. James MacDonald was charged with possession of marijuana with intent to sell or distribute (K.S.A. 65-4127b[3]) and possession of drug paraphernalia (K.S.A. 65-4152[a][2]). The trial court suppressed the evidence seized during the checklane operation. We have jurisdiction under K.S.A. 20-3018(c) (transfer on our motion from the Court of Appeals).

The trial court applied K.S.A. 1992 Supp. 22-2402, commonly referred to as the stop and frisk statute. (K.S.A. 1992 Supp. 22-2402 is a codification of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 [1968]. See *State v. McKeown*, 249 Kan.

506, 508-09, 819 P.2d 644 [1991].) The date of the trial court's ruling was May 1, 1992. *Davis v. Kansas Dept. of Revenue,* 252 Kan. 224, 843 P.2d 260 (1992) (decided December 11, 1992), and *State v. Barker,* 252 Kan. 949, 850 P.2d 885 (1993) (decided April 16, 1993), affect the case at bar. Consequently, our standard of review is unlimited because the issues involve the selection, interpretation, and application of a question of law. See *Gillespie v. Seymour,* 250 Kan. 123, Syl. ¶ 2, 823 P.2d 782 (1991).

The issues raised by the State focus on asserted trial court error in ruling that: (1) the traffic checklane failed to comply with the requirements of *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983), or, in the alternative, that the holding in *Deskins* applies only to DUI checklanes; (2) the state trooper lacked probable cause to search the car driven by MacDonald (we consider whether the detection of the odor of marijuana standing alone provides probable cause for a vehicle search following a checklane stop); and (3) MacDonald's incriminating statements were improperly obtained.

We hold that the evidence should not have been suppressed.

### Facts

Trooper Heim of the Kansas Highway Patrol participated in a traffic checklane operation in Saline County (the checklane operation approved in *State v. Barker,* 252 Kan. 949).

The checklane was described in *Barker:*

"On November 20, 1991, the Kansas Highway Patrol and other law enforcement agencies set up a checklane as part of a law enforcement effort called 'Span 70.' The checklane was part of a national law enforcement project, the purpose of which was to create a strong law enforcement presence along the entire expanse of Interstate 70. The traffic checklane was a local multijurisdictional law enforcement effort to focus on checking drivers' licenses and reducing 'accident-related causative factors.'

"The operation was implemented on November 20, 1991, from 2:00 a.m. until 6:00 a.m. A briefing was held for all personnel involved, including the Kansas Highway Patrol, Saline County Sheriff's Department, Dickinson County Sheriff's Department, Saline County Attorney's Office, Kansas Department of Transportation, and the Bureau of Alcohol, Tobacco, and Firearms prior to the commencement of the checklane stops.

"The checklane was set up at a rest area just west of Solomon in Saline County in such a way that all traffic on the interstate, whether eastbound or westbound, could be funneled into the rest area and stopped. Signs were posted approximately 500 feet from the entrances to the rest area, advising

motorists of the checklane. There was no advance publicity regarding the checklane." 252 Kan. at 950-51.

At approximately 4:00 a.m., Trooper Heim stopped a car driven by MacDonald. MacDonald's window was down. The trooper recognized an odor he thought to be marijuana (or burned marijuana). He had been trained to identify its scent and had previously smelled marijuana. Heim asked for MacDonald's driver's license and inquired of MacDonald and the passengers about the odor. He was told that what he had smelled was incense and cigarette smoke. Heim requested MacDonald to pull the car off to the side for further investigation (vehicles were beginning to stack up in the checklane). MacDonald complied and the conversation continued. Heim testified that he did not believe that the odor of incense matched the odor coming from the car; however, he also testified that he had not intended to arrest the occupants of the car based solely on the marijuana odor.

Heim looked into the car in an attempt to observe marijuana cigarettes, pipes, or marijuana. He observed a small metal box in the door pocket. Heim asked MacDonald what was inside the box. MacDonald replied, "What box?" The trooper indicated that he pointed to the box and said, "[T]hat box, right there." MacDonald took the box out and opened it, displaying what Heim recognized as marijuana.

Heim then (1) asked MacDonald to step out of the car; (2) advised MacDonald of his *Miranda* rights (Heim testified he believed that MacDonald understood his rights); (3) asked MacDonald if he had any additional marijuana or pipes (MacDonald retrieved a small baggie of marijuana from his pants pocket and a wooden pipe from his sock); and (4) removed the other occupants from the car so that the officers could search for additional marijuana. MacDonald and the car's owner gave verbal consent to search the car. Seven ziplock baggies, each containing approximately one and one-half ounces of marijuana, were discovered in a backpack that belonged to MacDonald.

Heim testified that during the time the car's passengers were in the restroom, where they had been taken because of the cold temperature, the officers inquired as to the purpose of the seven baggies of marijuana. MacDonald and another passenger of the car informed the officers that the baggies were to be given out

to friends as Thanksgiving gifts. Heim testified that all of the occupants of the car were then arrested and transported to the Salina police station. MacDonald was again informed of his *Miranda* rights. He signed a waiver and, in Heim's opinion, understood his rights.

## The Application of *Deskins*

The State asserts that the trial court erred when it ruled that the traffic checklane failed to comply with the requirements of *State v. Deskins*, 234 Kan. 529. In *Deskins*, we identified various factors that should be considered in determining whether a stop at a traffic checklane is reasonable when there is neither a warrant nor probable cause to otherwise justify the stop:

"(1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (7) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test." 234 Kan. at 541.

The only *Deskins* factor advanced in the case at bar which was not analyzed in *Barker* is "fear and anxiety." The anxiety factor in *Deskins* does not speak in terms of hypothetical anxiety. The *Deskins* factor is phrased "fear and anxiety *generated*." (Emphasis added.) 234 Kan. at 541. The trial court stated that "[t]here was no direct testimony upon this issue [of fear and anxiety]." The trial court explained that the only evidence introduced on the factor was the testimony of a highway patrolman, which indicated that motorists did not exhibit fear or anxiety. There is insufficient evidence of fear and anxiety in the record to support a conclusion that the checklane was unreasonable.

*Barker* controls. The checklane complied with the *Deskins* factors. See *Barker*, 252 Kan. at 956-57.

The trial court, in the case at bar, presented an alternative basis for suppressing the evidence, *i.e.*, *Deskins* only applies to DUI checklanes.

The State responds by observing that we specifically approved driver's license checkpoints in *Deskins*, 234 Kan. 529, Syl. ¶ 9. The State notes that the facts in *Deskins* are similar to the instant facts in that the trooper in *Deskins* made a DUI and possession of marijuana arrest (a small bag of marijuana was found in the car's glove compartment after Deskins' arrest). Furthermore, the State reasons that officers are not required to close their eyes to all offenses that are not traffic related. We agree.

MacDonald takes the position that the checklane was set up for general law enforcement purposes and, as such, was not authorized by *Deskins*. The same view was advanced unsuccessfully in *Barker*. 252 Kan. at 954. The initial stop of the car driven by MacDonald was reasonable. The detention of the car was consistent with the "drug interdiction" purpose referenced in *Barker*. 252 Kan. at 954.

### Probable Cause to Search the Car

When the trial court considered the question of probable cause, it concluded:

"Heim had a reasonable suspicion of marijuana in the vehicle from the odor emanating from the car. He then had the defendant pull his car out of line and the defendant was further detained. At that point in time, the court believes K.S.A. 22-2402 became implicated. Heim then observed a small tin box in the car and asked the defendant, 'what's in the box?' The defendant responded by opening the box and showing the contents to Trooper Heim (which he reasonably believed upon observation to be marijuana). In the court's opinion, this questioning went beyond that permitted under K.S.A. 22-2402, and was designed to procure or should have been reasonably known by Heim to produce exactly this kind of nonverbal response of the defendant. Without that crucial evidence there was an insufficient basis to arrest the defendant and search his vehicle."

K.S.A. 1992 Supp. 22-2402 does not apply to checklane stops established according to a plan embodying explicit neutral limitations on the conduct of individual officers. *Davis v. Kansas Dept. of Revenue*, 252 Kan. at 228-29. The stop in the case at bar is within the *Davis* rule.

The trooper had probable cause to further detain the vehicle when he smelled the marijuana odor. In fact, the trial court found that Heim had reasonable suspicion, based on the odor, that there was marijuana in the car. The odor created the needed particularized suspicion of criminal activity. See Annot., Odor of Nar-

cotics as Providing Probable Cause for Warrantless Search, 5 A.L.R.4th 681, 685 ("it frequently has been held that detection of the odor of fresh marijuana or marijuana smoke, standing alone, provided probable cause for searches of motor vehicles following stops by immigration or customs officers and stops for investigation of possible traffic or equipment violations"). Under the circumstances, it was reasonable for the trooper to act upon his suspicion. The opposite conclusion would require the officer to "look the other way" and not pursue evidence which signals a crime.

A majority of courts have found that marijuana odor detected by an experienced law enforcement officer can provide sufficient probable cause to support a warrantless search. *U.S. v. Padron,* 657 F. Supp. 840 (D. Del. 1987), *aff'd without op.* 857 F.2d 1466 (3rd Cir.), *cert. denied* 488 U.S. 974 (1988).

Heim had probable cause to search the car. The marijuana odor provided the basis for the suspicion that a crime had been committed and that evidence in connection with the crime was located within the automobile. In *California v. Acevedo,* 500 U.S. 565, 114 L. Ed. 2d 619, 111 S. Ct. 1982 (1991), the United States Supreme Court considered the question of "whether the Fourth Amendment requires the police to obtain a warrant to open [a] sack in a movable vehicle simply becasue they lack probable cause to search the entire car." 500 U.S. at 573. The Court thoroughly reviewed the conflicting state of search and seizure law as it relates to containers in automobiles. The Court reasoned that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." 500 U.S. at 580.

We have indicated that "[a]utomobile searches may be upheld if there is probable cause to believe there is evidence of crime in the automobile." *State ex rel. Love v. One 1967 Chevrolet,* 247 Kan. 469, 477, 799 P.2d 1043 (1990). The search of the car was supported by probable cause.

Additionally, MacDonald and the owner of the automobile consented to its search. The question of whether the consent in the case at bar was sufficiently distinguishable from the metal box incident is, to some extent, a question of fact. However, the owner was not directly implicated in the metal box exchange.

The owner's consent was sufficiently separate and voluntary. The owner's consent would have authorized the search, and the marijuana in the metal box would have been discovered. See *Florida v. Jimeno*, 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801 (1991).

## MacDonald's Incriminating Statements

The trial court suppressed all oral and written incriminating statements based upon the violation of K.S.A. 1992 Supp. 22-2402. The State believes that the trial court intertwined the concept of reasonable suspicion and the limited inquiry allowed under 22-2402, with the scope of a post-*Miranda* interrogation. According to the State, the trial court believed that the response given by MacDonald, *i.e.*, the physical act of opening the metal box, provided evidence without which the search could not have been conducted. However, the evidence, which was not challenged by MacDonald, was that the car's occupants were attempting at that time to convince the trooper that the odor he had detected was incense. The State contends that the question by the trooper concerning the contents of the metal box was not unreasonable considering the context of the conversation and the other surrounding circumstances. We agree.

The State explains that when MacDonald was placed under arrest, the *Miranda* warning was promptly given. MacDonald chose to give both oral and written statements. Consequently, the State believes that the suppression of the statements was not supported by the evidence or by *Miranda*. MacDonald does not separately address this issue. He reasons that the interrogation was beyond the permissible scope of 22-2402.

The rationale of *Davis v. Kansas Dept. of Revenue*, 252 Kan. at 228, applies. K.S.A. 1992 Supp. 22-2402 does not govern the questioning that occurred concerning the metal box. MacDonald's later post-*Miranda* inculpatory statements were not fruits of the poisonous tree and are admissible.

Reversed and remanded.