(942 P.2d 640)

No. 77,376

STATE OF KANSAS, *Appellant*, v. JOSEPH JACKSON, *Appellee*.

Opinion filed June 20, 1997.

*Jacqueline J. Spradling*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Thomas E. Foster*, of Foster & Foster, of Overland Park, for appellee.

Before BRAZIL, C.J., ELLIOTT and KNUDSON, JJ.

ELLIOTT, J.: The State brings this interlocutory appeal challenging the trial court's suppression of evidence obtained during a checklane stop conducted by the highway patrol.

We reverse and remand.

Sergeant Ray Bailiff had been involved with conducting and arranging checklanes for several years and was the supervising officer of a checklane located at northbound exit 210 on I-35 in Johnson County. Bailiff prepared a public announcement describing the location, time, and purpose of the checklane and sent it to Troop A communications, where the media is advised of upcoming events if inquiry is made. Notice was also posted on the public information board in the main lobby of the highway patrol office in Olathe.

The public announcement described the checklane's purpose as one for checking driver's licenses, registrations, equipment defects, and seat belt and child restraint usage. Bailiff testified the primary purpose of the checklane was to enforce all laws coming to the officers' attention. Drug dogs were on site.

Northbound motorists on I-35 were advised of the checklane by five signs stating either "check lane ahead" or "narcotics check lane ahead." Four of the signs were placed on either side of the roadway. The fourth sign was placed before the "Exit 210" sign, but beyond where cars would turn off to exit on exit 210. None of the first four signs gave any indication the checklane was on the exit ramp. The fifth sign was on the exit itself as motorists were approaching the checklane.

None of the 17 officers at the scene was given any discretion: every car was directed through the lane. The average car took about 25 seconds to complete the check. The range of time for motorist delay without any enforcement action was from 10 to 35 seconds.

Defendant Joseph Jackson drove a pickup truck with camper shell through the lane. Major Hornbaker saw a large bag of marijuana through the back window while the truck was stopped. Defendant and his passenger were arrested.

The trial court ruled the checklane did not pass the criteria established by *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983), because there was no prior notice to the public and because the notice provided to oncoming motorists by the signs was misleading.

Under the peculiar facts of this case, we rule the checklane was constitutional as a matter of law.

The *Deskins* court noted that not every DUI checklane is constitutionally forbidden. 234 Kan. at 540. The *Deskins* court also enumerated several factors to be considered in determining the validity of a checklane:

"(1) The degree of discretion, if any, left to the officer in the field; (2) the location designated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test." *Deskins*, 234 Kan. at 541.

Numerous other cases are also instructive. *Davis v. Kansas Dept. of Revenue*, 252 Kan. 224, 227, 843 P.2d 260 (1992), for example, makes clear that no specific statutory grant of authority is required to legitimize a checklane operation (for sobriety checks). 252 Kan. at 229-30.

In *State v. Barker* 252 Kan. 949, 850 P.2d 885 (1993), there was no advance warning to the public at large of the scheduled checklane. And while the court noted it would be a desirable requirement, its absence does not by itself invalidate the checklane. 252 Kan. at 956. The *Barker* court also observed that the presence of a drug-sniffing dog at a sobriety checklane did not constitute an illegal search. See 252 Kan. at 957.

*State v. MacDonald*, 253 Kan. 320, 322, 856 P.2d 116 (1993), involved the same checklane as in *Barker*. The *MacDonald* court held the detection of marijuana odor, standing alone, provided probable cause for a search following a checklane stop. 253 Kan. 320, Syl. ¶ 2. In the present case, a large bag of marijuana was observed in plain sight in Jackson's truck. The sense of sight is surely on equal footing with the sense of smell.

The *MacDonald* court also noted that *Deskins* is not limited to DUI checklanes and that police officers are not required to close their eyes to all offenses which are not purely traffic related. 253 Kan. at 323-24.

If the odor of marijuana can provide a legal basis for a search, then the sight of marijuana at a checklane can also provide probable cause for a search. See *MacDonald*, 253 Kan. at 325.

Kansas is not alone in its approach to similar fact patterns. The Seventh Circuit has recognized that the absence of *any* signs advising approaching motorists of a checklane does not destroy the constitutional nature in which the checklane was administered. *U.S. v. Trevino*, 60 F.3d 333, 337 (7th Cir. 1995).

The Supreme Court of Missouri has found similarly. In *State v. Damask*, 936 S.W.2d 565 (Mo. 1996), as here, law enforcement officers established a checklane on an exit lane off of I-44, contrary to signs that indicated the checklane was at an exit further down the interstate. The exit was remote and it was unlikely that motorists would exit there, unless they were locals or were trying to avoid the checklane. See 936 S.W.2d at 573.

As the cases cited demonstrate, the checklane in the present case was established with safety in mind, limited discretion in the officers on site, and met the standards established by case law. The State is under no obligation to give drivers an opportunity to avoid a checklane. See *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990).

In the present case, the checklane was constitutional as a matter of law.

Reversed and remanded for further proceedings.