No. 119,986

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DAVON M. GILL,
*Appellee*.

SYLLABUS BY THE COURT

1.

Because the purpose of K.S.A. 2018 Supp. 22-4609 is designed to prohibit the use of racial or other biased-based policing, the use of this kind of policing is restricted under the following circumstances: (1) Determining the existence of probable cause to take into custody or to arrest an individual; (2) establishing a reasonable and articulable suspicion that an offense has been or is being committed so as to justify the detention of an individual or the investigatory stop of a vehicle; or (3) determining the existence of probable cause to conduct a search of an individual or a conveyance.

2.

Under K.S.A. 2018 Supp. 22-4606(d), racial or other biased-based policing is the following: The unreasonable use of race, ethnicity, national origin, gender, or religion by a law enforcement officer in deciding to initiate an enforcement action. It is not racial or other biased-based policing when race, ethnicity, national origin, gender, or religion is used in combination with other identifying factors as part of a specific individual description to initiate an enforcement action.

3.

A defendant may establish a prima facie case of unlawful biased-based policing (1) by showing that the defendant is a member of a class listed in K.S.A. 2018 Supp. 22-4606(d) and (2) by giving reasons for arguing that race (or another listed characteristic under K.S.A. 2018 Supp. 22-4606[d]) was unreasonably used in the decision-making process for initiating the stop.

4.

Determination of whether an officer unreasonably used race or any other listed characteristic under K.S.A. 2018 Supp. 22-4606(d) in deciding to initiate an enforcement action will largely depend on credibility—a weighing of the evidence process that is already quite familiar to district judges. As with any credibility assessment, a district judge must weigh surrounding facts and circumstances along with a witness' statements.

5.

Supreme Court Rule 165 (2019 Kan. S. Ct. R. 221) imposes on the district court the primary duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. A party, however, must object to inadequate findings and conclusions to preserve an issue for appeal. Such objections necessarily give the district court an opportunity to correct any alleged inadequacies.

6.

When a defendant's motion to suppress evidence maintains a violation of K.S.A. 2018 Supp. 22-4606(d) and K.S.A. 2018 Supp. 22-4609, the State bears the burden to establish that neither race, ethnicity, national origin, gender, nor religion was unreasonably used by a law enforcement officer in deciding to initiate an enforcement action.

2

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed June 21, 2019. Affirmed.

*Andrew R. Davidson*, assistant district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Kristen B. Patty*, of Wichita, for appellee.

Before LEBEN, P.J., GREEN and POWELL, JJ.

GREEN, J.: Davon M. Gill was arrested by an officer of the Hutchinson Police Department for possession of marijuana with the intent to sell. Gill, who is African-American, moved to suppress the evidence recovered from his stop based on the officer's unreasonable use of race to initiate the stop. The district court agreed and granted Gill's motion to suppress the evidence. On appeal, the State argues that the evidence was insufficient to support the district court's holding that the officer unreasonably used race in deciding to initiate the enforcement action. We disagree. Accordingly, we affirm.

Late on the afternoon of September 11, 2017, Hutchinson Police Officer James Sanders, who is white, was sent to an apartment complex to investigate a reported theft case. Sanders was not provided any other information and was not looking for any particular suspects at the time. More specifically, he was not told by dispatch that he should be on the lookout for two African-American men in a SUV. Further, he had not met previously either Gill or his passenger, Fatir Hines, and he had no previous information about them, including whether either was involved in any type of drug or theft activity. When Sanders arrived at the apartment complex, he was aware or recognized that the two men in the nearby SUV were African-American.

Sanders' body-worn camera showed that as he was getting out of his patrol car, he shouted, "You guys call?" toward the SUV occupied by the two African-American males.

3

Sanders received this reply:  "No, sir." Taking a step towards the apartment building, he turned back towards the SUV and while walking about eight steps to the passenger door, asked, "Where you all from?" He received a reply, "Not here." When the driver, later identified as Gill, started to drive away, Sanders let Gill know that he was not free to leave and that he had to answer Sanders' questions:  "Hold on. I'm talking to you . . . . Because I got called out to this area . . . . I know you didn't call me. Put the vehicle in park."

At this point, Sanders began addressing Gill as "dude" and although Gill had not committed a traffic violation and seemingly was lawfully parked, Sanders demanded Gill's driver's license and proof of insurance "because I'm asking for it." Eventually, after about another 39 seconds and some 94 seconds after the encounter started, Sanders stated that he could smell marijuana in the SUV. Officer Long arrived five minutes later and Sanders told Long why he walked over to the SUV—"I'm out here for a theft case. I pull up in my vehicle and these two are staring at me hard and start looking back so I start walking over here."

A search of Gill's SUV yielded 18 individually wrapped baggies of marijuana, weighing approximately 20 grams in a hidden compartment in the center console underneath the cup holders.

Gill was charged with possession of marijuana with intent to distribute less than 25 grams within 1,000 feet of a school, K.S.A. 2017 Supp. 21-5705(a)(4) and (d)(5), a severity level 3 nonperson drug felony. Gill moved to suppress the evidence from the stop, alleging that race-based policing was unreasonably used by Sanders in deciding to initiate an enforcement action prohibited by K.S.A. 2017 Supp. 22-4606(d) and K.S.A. 2017 Supp. 22-4609.

4

After an evidentiary hearing, the district court ruled that Sanders had unreasonably used race in deciding to initiate the enforcement action and granted Gill's motion to suppress the evidence. In the district court's order granting Gill's motion, it found and ruled as follows:

"The question for the Court to determine is if race was unreasonably used in deciding to initiate enforcement action and therefore constitute a violation of 22-4609.

"Did Officer Sanders approach the Defendant's vehicle in relation to the theft call? No evidence was presented concerning the nature of the theft call. On the video, Officer Sanders indicates to the Defendant, 'I know you didn't call me.' The evidence would indicate the officer did not approach the vehicle in relation to investigation of the theft report.

"Officer Sanders indicated he could smell marijuana coming from the Defendant's vehicle. If the officer smelled marijuana at his vehicle he had no way of determining the marijuana smell was coming from the Defendant's vehicle. There was vehicle parked right next to the Officer's vehicle. The apartment complex was nearer to the officer than the Defendant's vehicle.

"Of importance is the statement on the video given by Officer Sanders to Officer Long. Officer Sanders told Officer Long [the backup officer], they were 'staring at me hard, then started looking back, so I walked over here.' The Court has no doubt from the evidence as the officer approached the vehicle he was able to determine the marijuana smell was coming from the vehicle.

"The evidence indicates the officer approached the vehicle because the two occupants were 'staring hard' at him. That is what Officer Sanders says on the video as to why he approached the vehicle.

"K.S.A. 22-4609 is triggered because the Defendant and his passenger were black males. As the Court has previously indicated, the actions of Officer Sanders were constitutional and legal except for possible application of 22-4609. Under the broad standard set out in the *Gray* decisions, the Court finds approaching two black males because they are 'staring hard at you' is unreasonably using race in deciding to initiate the enforcement action.

"The Defendant's motion to suppress is granted."

5

*Did the District Court Err in Suppressing Evidence Recovered From the Stop Under*
*K.S.A. 2018 Supp. 22-4609?*

The State argues on appeal that the district court erred in granting Gill's motion to suppress that was based on K.S.A. 2018 Supp. 22-4609. On the other hand, Gill argues the district court was correct in suppressing the evidence because Sanders' statement that Gill and the passenger were "staring at me hard" indicates that Sanders unreasonably used Gill's race to initiate the stop.

We note that this appeal differs from a typical suppression issue based on alleged violations of the Fourth Amendment to the United States Constitution. Gill makes no constitutional argument nor does he seek suppression under the exclusionary rule. See *State v. Gray*, 306 Kan. 1287, 1293, 403 P.3d 1220 (2017). Rather, Gill argues that unlawful biased-based policing was used in violation of K.S.A. 2018 Supp. 22-4609. As a result, he argued that the evidence derived from the stop should be suppressed under K.S.A. 22-3216(1).

*Prima Facie Case*

Because this case involves whether a police officer unreasonably used a defendant's race to initiate the stop, Gill may establish a prima facie case of unlawful biased-based policing (1) by showing that he is a member of a class listed in K.S.A. 2018 Supp. 22-4606(d) and (2) by giving reasons for arguing that race (or another listed characteristic under K.S.A. 2018 Supp. 22-4606(d) was unreasonably used in the decision making process for initiating the stop. See *Gray*, 306 Kan. at 1301-02. Gill established a prima facie case of unlawful biased-based policing in his motion by showing that he is African-American and, based on the facts of this case, by showing that Officer Sanders had no valid basis to stop Gill or suspect him of a crime when Sanders started walking towards Gill's SUV.

6

Before continuing with our discussion, we believe a review of the applicable statutes will be helpful. K.S.A. 22-3216(1) states: "Prior to the trial a defendant aggrieved by an unlawful search and seizure may move for the return of property and to suppress as evidence anything so obtained."

K.S.A. 2018 Supp. 22-4609 states:

"It is unlawful to use racial or other biased-based policing in:
"(a) Determining the existence of probable cause to take into custody or to arrest an individual;
"(b) constituting a reasonable and articulable suspicion that an offense has been or is being committed so as to justify the detention of an individual or the investigatory stop of a vehicle; or
"(c) determining the existence of probable cause to conduct a search of an individual or a conveyance."

K.S.A. 2018 Supp. 22-4606(d) defines "racial or other biased-based policing" as follows:

"[T]he unreasonable use of race, ethnicity, national origin, gender or religion by a law enforcement officer in deciding to initiate an enforcement action. It is not racial or other biased-based policing when race, ethnicity, national origin, gender or religion is used in combination with other identifying factors as part of a specific individual description to initiate an enforcement action."

Our Supreme Court addressed the interplay of K.S.A. 22-3216 with K.S.A. 2014 Supp. 22-4606(d) and K.S.A. 2014 Supp. 22-4609 in *Gray*, 306 Kan. at 1294-97. We note that K.S.A. 2014 Supp. 22-4606 and K.S.A. 2014 Supp. 22-4609 are identical to K.S.A. 2018 Supp. 22-4606 and K.S.A. 2018 Supp. 22-4609. In *Gray*, the court held that

if K.S.A. 2014 Supp. 22-4609 is violated then suppression under K.S.A. 22-3216(1) is the appropriate remedy. 306 Kan. at 1297. In so holding, the court stated:

> "[T]he Kansas Legislature has tied the suppression remedy to one consideration and one consideration alone: Was there 'an *unlawful* search and seizure?' K.S.A. 22-3216(1). If so, suppression is an appropriate remedy. Circling back to the plain language of K.S.A. 2014 Supp. 22-4609 that '[i]t is unlawful to use racial or other biased-based policing,' we hold that K.S.A. 22-3216 provides a remedy for a violation of Kansas' biased-based policing statutes, K.S.A. 2014 Supp. 22-4606 *et seq.*" 306 Kan. at 1297.

Our standard of review for this appeal is twofold. First, this court must determine if the district court applied the correct test to the facts of this case as set forth in *Gray*: "The district judge must examine more than the ultimate justification of a traffic stop and must consider whether an officer 'unreasonably use[d]' race or another characteristic listed in K.S.A. 2014 Supp. 22-4606(d) in deciding to initiate the enforcement action." 306 Kan. at 1298. Our Supreme Court explained:

> "[W]e stop short of requiring an officer to articulate grounds separate from a traffic offense as the 'but-for' cause of the stop. The biased-based policing statutes do not require this result. Instead they prohibit the unreasonable use of race in deciding to initiate a pretextual enforcement action.
>
> "This means that ultimately, at least in many cases, the determination of whether an officer unreasonably used race will largely depend on credibility—a weighing-of-the-evidence process that is already quite familiar to district judges. As with any credibility assessment, a district judge must weigh surrounding facts and circumstances along with a witness' statements. In a case . . . where the defendant urges suppression based on an unlawful (but not unconstitutional) search or seizure, a district court cannot focus on whether a traffic violation caused or justified a pretextual stop. Instead, the district court must consider whether race, national origin, ethnicity, gender, or religion was unreasonably used in deciding to *initiate* the enforcement action. This means that a judge will consider any reasons proferred by the State as to why a particular traffic signal violation was enforced and determine whether those reasons credibly, fairly, and

uniformly would result in decisions to initiate traffic stops regardless of a driver's race, ethnicity, national origin, gender, or religion." 306 Kan. at 1302-03.

Second, and only if the district court judge applied the correct legal test, do "we turn to the factual issues and determine if substantial competent evidence supported the judge's findings and if the judge reached the correct legal conclusion." 306 Kan. at 1294.

Here, the district court applied the correct legal test. The district court determined that "approaching two black males because they are 'staring hard at you'" is unreasonably using race in deciding to initiate the enforcement action. Because the district court applied the correct test, we move to the second step of the analysis.

Within this second step we make two inquiries. First, we review "the district court's factual findings to determine whether they are supported by substantial competent evidence." *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Substantial competent evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. *Hanke*, 307 Kan. at 827. The State has the burden to prove that the enforcement action was lawful. *Gray*, 306 Kan. at 1302. Second, this court reviews the ultimate legal conclusion of the district court de novo. *Hanke*, 307 Kan. at 827.

Pointing out that he had reviewed the transcript from the evidentiary hearing as well as Sanders' body-worn camera video, the district judge then listed two facts he considered significant:

(1) *That Sanders did not approach the SUV to investigate the theft report*. This inference of the district court judge is reasonably drawn from the facts. For

9

example, when Sanders started walking towards the apartment complex, he executed a Lieutenant Columbo pirouette (a television detective in a TV series from 1971 to 2003) and started walking towards Gill's SUV. Moreover, when Sanders walked up to the SUV, he told Gill to place his car in the park mode. Sanders acknowledged that he knew Gill and Hines had not called him about the theft case. In so doing, Sanders stated the following: "I know you didn't call me." Moreover, Sanders later told another officer the following reason for walking up to Gill's SUV: "I'm out here for a theft case. I pull up in my vehicle and these two are staring at me hard and start looking back so I start walking over here." Thus, Sanders implicitly conceded that he had completely abandoned the theft call and was now focused on the two African-American males sitting in an SUV.

(2) *That if Sanders could smell marijuana from where his patrol car was parked, he would not have been able to determine if the marijuana smell was coming from Gill's SUV because another parked vehicle and the apartment complex were nearer to his patrol car than Gill's SUV.* Here, the district court judge made a credibility determination. He determined that Sanders' testimony that the smell of marijuana was coming from Gill's SUV was not credible. As the district court judge pointed out, from where Sanders' patrol car was located, the odor of marijuana could have come from two other sources: (1) from the nearby apartment complex or (2) from another nearby parked car. Here, the district court judge weighed the surrounding facts and circumstances, as discussed in the *Gray* decision, in finding that Sanders' testimony that he smelled marijuana coming from Gill's SUV immediately upon getting out of his patrol car was not credible.

Our Supreme Court Rule 165 (2019 Kan. S. Ct. R. 221) has imposed on the district court the primary duty to provide adequate findings of fact and conclusions of law

10

on the record to explain the court's decision on contested matters. A party, however, must object to inadequate findings and conclusions to preserve an issue for appeal. Such objections give the district court an opportunity to correct any alleged inadequacies. See *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013).

Here, the State did not challenge the district court's factual findings. Thus, we can presume the district court found all the facts necessary to support its judgment. See *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015).

The State and the dissent spend the majority of their arguments asking us to reweigh the evidence, which we cannot do. See *State v. Ransom*, 288 Kan. 697, 705, 207 P.3d 208 (2009). Moreover, the State seems to implicitly concede in its brief that Sanders did not smell marijuana until after he decided to approach Gill's SUV. In its brief, the State concedes that Sanders stated the following: "'[T]hese two are staring at me hard; and start looking back so I start walking over here; I can smell marijuana.'"

Indeed, Sanders implicitly conceded in his testimony that was unsure the smell of marijuana was coming from Gill's SUV until he spoke with Gill at his SUV. Sanders testified: "[A]s I walked toward the vehicle that scent grew stronger. As I was speaking with [Gill] I was a hundred percent sure that marijuana was in that vehicle." Thus, until Sanders spoke with Gill at his SUV, Sanders was not certain that the smell of marijuana was coming from Gill's SUV. Moreover, Sanders' testimony supports the district court judge's factual finding that Sanders' testimony that he smelled marijuana coming from Gill's SUV immediately upon getting out of his patrol car was not credible. Therefore, if the smell of marijuana factor is removed from this case, the rest of Sanders' alleged unbiased reason for deciding to initiate the stop of Gill's SUV topples like a house of cards.

11

Contrary to the dissent's suggestion, no one here is branding Officer Sanders as a racist. That is not the question before the court.

The dissent points out that Sanders did not utter any racial epithets at the scene and had no history of discriminatory conduct. The statute prohibiting race-based policing does not require such evidence. The dissent, however, creates a false equivalence when it declares that if we (the district court and the majority) conclude that race impermissibly played into the stop in this case, we are necessarily declaring that Officer Sanders is a racist. Far from that, we are merely saying that in this specific case, Officer Sanders let racial bias—conscious or unconscious—affect his initiation of enforcement action.

Moreover, the dissent's position requires a distorted reading of what constitutes race-based policing under K.S.A. 2018 Supp. 22-4609. If the dissent would limit the application of K.S.A. 2018 Supp. 22-4609 to only exceptionally horrific or despicable race-based behavior by law enforcement officers, the intended purpose of this statute would soon become meaningless. Nevertheless, the plain reading of K.S.A. 2018 Supp. 22-4609 does not restrict the application of this statute to only horrific or despicable race-based policing because the Legislature recognized that racial bias is not always overt, it is often subtle.

Indeed, the former top law enforcement officer of this country once reminded us of the dark history of law enforcement in this country: "All of us in law enforcement must be honest enough to acknowledge that much of our history is not pretty," he said. "At many points in American history, law enforcement enforced the status quo, a status quo that was often brutally unfair to disfavored groups." He further noted that there has been significant research showing that all people have some form of unconscious racial biases. He stated that most people cannot help their instinctive biases. But he challenged all law enforcement officers "to design systems and processes to overcome that very human part of us all." Michael S. Schmidt, *FBI Chief Opens Dialogue On Race*, Kansas

12

City Star (February 13, 2015); see also Judge Bernice B. Donald and Sarah E. Redfield, *Framing the Discussion*, in Enhancing Justice: Reducing Bias 13-19, 23 (Redfield ed., 2017) (explaining that persons acting on implicit bias most likely "believ[e] themselves to be making objective decisions").

In conclusion, Sanders had no information regarding Gill's SUV or its occupants being involved in the theft case he was sent to investigate. Sanders acknowledged that he was not investigating Gill or Hines based on the theft case. Indeed, Sanders told Gill and Hines that he knew that they did not call him about the theft case. Thus, if the unsupported smell of marijuana coming from Gill's SUV is taken from the equation in this case, we are left with the following:

(1)     Sanders seeing two African-American males sitting in a SUV "staring at [him] hard." So Sanders starts walking towards the SUV seemingly for the purpose of detaining the two African-American males or for the purpose of making an investigatory stop of their SUV. Indeed, while addressing Gill, Sanders said, "Hold on. Hold on. I'm talking to you . . . . I know you didn't call me. Put the vehicle in park."

(2)     Also, while questioning Gill, Sanders would contemptuously refer to Gill as "dude."

Again, if the unsupported characterization of Sanders that he smelled marijuana coming from Gill's SUV immediately upon getting out of his patrol is gone, there is no factual predicate to support Sanders' interference with Gill's mobility of his SUV in our mobile society.

The district court judge found that K.S.A. 2018 Supp. 22-4609 was "triggered because the Defendant and his passenger were black males." Thus, the district court judge

13

found that Gill's and Hines' race fed into why Officer Sanders decided to walk over to Gill's SUV and stopped them. Here, the State has failed to meet its burden to show that race was not unreasonably used by Officer Sanders to intrude and to interfere with Gill's mobility when he decided to detain Gill and Hines or to make an investigatory stop of their car or both. For this reason, we determine that the district court judge correctly concluded that "approaching two black males because they are 'staring hard at you' is unreasonably using race in deciding to initiate the enforcement action."

Affirmed.

* * *

POWELL, J., dissenting:  Before we brand an officer of the law—one who has taken an oath to uphold the constitution and laws of our state—a racist, there ought to be evidence supporting such a serious charge. Many politicians today all too often invoke racism as a convenient cudgel against their political opponents, effectively diluting such a serious moral wrong into a mere political epithet. However, when a court hurls such an accusation, it sticks. And contrary to the majority's disclaimer, that is what is happening here. In fact, it is difficult to fathom a more grievous act of racism than for a law enforcement officer to wrongly use race to invoke the immense power of the government to detain, search, and arrest someone.

Here, the district court, without any evidence, found that Officer James Sanders of the Hutchinson Police Department, a Marine Corps veteran, used race as the basis to initiate a law enforcement action against Davon M. Gill, an African-American, who was subsequently arrested for possession of marijuana with the intent to sell after drugs were found in his car. Because I strongly disagree with the majority's affirmation of this unjust finding, I dissent.

14

Kansas law prohibits the unreasonable use of race in determining whether to initiate law enforcement action. K.S.A. 2018 Supp. 22-4609. In *State v. Gray*, 306 Kan. 1287, 403 P.3d 1220 (2017), the defendant claimed he was stopped due to racial profiling and filed a motion to suppress. The district court denied his motion; Gray appealed but claimed no constitutional violations. On appeal, Gray argued that the district court should apply a variation of the *Batson* test, namely, that "'[w]henever an officer makes a pretextual stop of a member of a protected class, the burden should shift to the state to show some race-neutral justification, other than the basis for the pretextual stop itself, for investigating a particular person or vehicle.'" 306 Kan. at 1300-01; see also *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (test for determining whether prosecution unlawfully used race in striking potential juror). As justification for this test, Gray argued that the Kansas statute against racial profiling would be "'left impotent'" if it were enough for a law enforcement officer to merely state that race did not factor into the decision to initiate an enforcement action. *Gray*, 306 Kan. at 1300.

Significantly, our Supreme Court rejected Gray's argument:

"Instead, the district court must consider whether race . . . was unreasonably used in deciding whether to initiate the enforcement action. This means that a judge will consider any reasons proffered by the State as to why a particular . . . violation was enforced and determine whether those reasons credibly, fairly, and uniformly would result in decisions to initiate traffic stops regardless of a driver's race." 306 Kan. at 1303.

See also 306 Kan. at 1295-98 (test to apply K.S.A. 2018 Supp. 22-4609 to suppression motions where no allegations of constitutional infirmities are present). Applying this test to our case, Gill needed to state facts showing he was a member of a class listed in K.S.A. 2018 Supp. 22-4606(d) as well as the reasons for arguing that race was unreasonably used in the decision-making process for initiating the stop. As Gill satisfied those two

15

factors, the burden then shifted to the State to establish that race was not unreasonably used by a law enforcement officer in deciding to initiate an enforcement action. See *Gray*, 306 Kan. at 1301-02.

It is clear that the district court did not believe much of Sanders' testimony. The court did not believe Sanders' explanation that he was called to the scene because of a theft call, did not believe Sanders' claim that he could smell marijuana emanating from Gill's car, and made the perplexing conclusion that Sanders' statement that Gill and the passenger in his vehicle were "staring at him hard" constituted proof of racial animus. While I am aware that our deferential standard of review does not allow me much room to second guess the district court's factual findings, no deference need be given to the district court's legal conclusions. See *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016) (district court's factual findings reviewed for substantial evidence; no deference to legal conclusions). After reviewing the transcript of the suppression hearing and the officer's body-cam video, I draw a completely different conclusion from the evidence as the district court did. There is simply no evidence of racial animus. See *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) ("Facially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker."). In particular, I note that there is no evidence that Sanders at the scene uttered any racial epithets, that he has a history of doing so, or that Sanders has ever engaged in any discriminatory conduct. See, generally, *Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (disclosure of evidence involving credibility of law enforcement witness required); *Milke v. Ryan*, 711 F.3d 998, 1011 (9th Cir. 2013) (*Giglio* applicable to evidence of law enforcement officer's misconduct in unrelated case); *Blue v. Perciasepe*, 970 F. Supp. 2d 34, 48 (D.D.C. 2013) (law enforcement officers held to high standard and have to maintain credibility in order to provide sworn testimony in future investigations). And no reasonable person could construe his use of the term "dude" when addressing Gill as racially insensitive. See, generally, *Anderson v. Durham D & M, L.L.C.*, No. 07-0653-CV-W-DGK, 2009 WL 585653, at *9 n.4 (W.D. Mo. 2009)

(unpublished opinion) ("SpongeBob is not a racist reference."), *aff'd* 606 F.3d 513 (8th Cir. 2010); THE BIG LEBOWSKI (Working Title Films 1998) (sympathetic main character Jeff "The Dude" Lebowski). In fact, Sanders testified that racism was against his moral code. The majority's suggestion that Sanders' actions may have been motivated by his "implicit bias" is also completely unsupported by the record. See also PIK Crim. 4th 52.010 (2015 Supp.) (defendant acts intentionally when it is defendant's desire or conscious objective to do act complained about).

The district court found that Sanders did not approach the vehicle because of the smell of marijuana but, instead, because Gill and his passenger were "staring at him hard." However, there is no evidence in the record on appeal establishing that "staring at him hard" equates to a race-based decision to initiate law enforcement action. There is no testimony that Sanders approached the vehicle because its occupants were African-American, nor is there testimony that such a statement is jargon or code for a race-based foundation of the stop. I view the words "staring at him hard" in this context as possible evidence of a guilty mind on the part of Gill instead of racial animus. Although the district court said that Sanders should have investigated the apartment complex and another vehicle—which appears to have been unoccupied with closed windows—before investigating whether the smell of marijuana was emanating from Gill's vehicle, this is not a requirement the Kansas Supreme Court has placed on officers. See *State v. Hubbard*, 309 Kan. 22, Syl. ¶ 5, 430 P.3d 956 (2018) ("The totality of the circumstances surrounding a law enforcement officer's detection of the smell of raw marijuana emanating from a residence can supply probable cause to believe the residence contains contraband or evidence of a crime."); *State v. MacDonald*, 253 Kan. 320, Syl. ¶ 2, 856 P.2d 116 (1993) ("[T]he detection of the odor of fresh marijuana or marijuana smoke, standing alone, provides probable cause for a motor vehicle search following a checklane stop."); *State v. Goff*, 44 Kan. App. 2d 536, 539, 239 P.3d 467 (2010) ("The smell of raw marijuana alone is sufficient to give an officer both reasonable suspicion and probable cause."), *rev. denied* 292 Kan. 967 (2011).

17

Here, the record shows that Gill's vehicle, which was approximately 15 feet from Sanders, was the likely source of the raw marijuana smell: It had two occupants who intently looked at Sanders when he pulled up to investigate the theft call, its windows were down, and the driver attempted to leave as Sanders exited his patrol vehicle. Further, Sanders testified that the smell of marijuana grew stronger as he approached Gill's vehicle. The district court emphasized Sanders' statement to the backup officer that he made contact because Gill and the passenger were "staring at him hard" and determined that such a statement established racial animus. However, the district court and the majority seem to view these four words in isolation from Sanders' entire statement. Sanders stated, "I'm out here for a theft case. And I pull up in the vehicle. These two are staring at me hard and then start looking back so I start walking over here—I smell the odor of marijuana." And the backup officer, who was approximately 8 to 10 feet away from Gill's vehicle, replied, "Jesus, I can smell it from here." When viewing Sanders' "staring at him hard" statement in context, any nefarious rationale is removed from the phrase. Moreover, the smell of marijuana is the same regardless of the race of the individual possessing it. Here, the smell of marijuana "credibly, fairly, and uniformly would result in" Sanders' decision to investigate Gill regardless of race. See *Gray*, 306 Kan. at 1303. Ultimately, a review of the hearing indicates no evidence was elicited by Gill or the State that race was used as a factor in this stop. The district court's conclusion that any such motive existed is unsupported by the record on appeal. Accordingly, I would reverse the district court's suppression order and remand the case for further proceedings.