IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,888

STATE OF KANSAS,
*Appellee*,

v.

LAWRENCE C. HUBBARD,
*Appellant.*

SYLLABUS BY THE COURT

1.

On a motion to suppress evidence, an appellate court reviews the factual findings underlying the trial court's suppression decision using a substantial competent evidence standard and the legal conclusion drawn from those factual findings using a de novo standard. The court does not reweigh evidence.

2.

Warrantless searches are considered unreasonable and invalid unless they fall within a recognized exception to the warrant requirement. It is the State's burden to demonstrate a challenged search was lawful.

3.

A warrantless search is permissible when there is probable cause for the search and exigent circumstances justifying an immediate search.

1

4.

Probable cause to support a search can be established if the totality of the circumstances indicates there is a fair probability the place to be searched contains contraband or evidence of a crime.

5.

The totality of the circumstances surrounding a law enforcement officer's detection of the smell of raw marijuana emanating from a residence can supply probable cause to believe the residence contains contraband or evidence of a crime. Such circumstances include, but are not limited to, proximity to the odor's source, reported strength of the odor, experience identifying the odor, elimination of other possible sources of the odor, and the number of witnesses testifying to the odor's presence. This is a case-by-case determination based on the circumstances. Not all cases relying on odor will have the same result.

6.

Exigent circumstances include situations when a law enforcement officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband.

7.

When determining the existence of an exigency based on the potential loss of evidence, a reviewing court should consider various circumstances, including: (a) the time needed to secure a search warrant; (b) the reasonableness of the officers' belief the evidence may be immediately lost; (c) potential danger to the officers guarding the site while awaiting a warrant; (d) whether those persons with possession of the evidence are aware of the officers' presence; and (e) the ease with which the evidence might be destroyed or hidden.

8.

Whether a witness—expert or layperson—is qualified to testify as to an opinion is to be determined by the trial court in the exercise of its discretion.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 22, 2016. Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed December 7, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*James E. Rumsey*, of Lawrence, argued the cause and was on the briefs for appellant.

*Kate Duncan Butler*, assistant district attorney, argued the cause, and *Patrick J. Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  Lawrence C. Hubbard appeals his misdemeanor convictions of possession of marijuana and possession of drug paraphernalia. He claims the drug evidence should have been suppressed because:  (1) the initial warrantless entry into his apartment for a security sweep was premised on a police officer's statement that she smelled raw marijuana while standing at the front door; (2) an affidavit supporting a search warrant omitted material facts; and (3) the officer's suppression-hearing testimony about smelling the raw marijuana odor was inadmissible expert testimony. A Court of Appeals panel affirmed. *State v. Hubbard*, No. 113,888, 2016 WL 1614177 (Kan. App. 2016) (unpublished opinion). We find no error and affirm.

3

While on routine surveillance at a local convenience store, Lawrence Police Officer Kimberly Nicholson checked a vehicle's license plate. That records check indicated the car had been stopped several weeks earlier with Irone Revely driving. It was noted there was an active arrest warrant for Revely's brother, Chayln Revely. Nicholson confirmed Irone was the driver, and she believed the passenger matched Chayln's description.

Nicholson followed the vehicle, looking for a traffic violation that would permit a vehicle stop and might allow the officer to confirm the passenger's identity. No violation occurred, so Nicholson followed the vehicle to an apartment complex. The passenger got out and ran into an apartment. Irone trailed behind. Nicholson approached and asked Irone if the person who ran into the apartment was his brother. Irone did not answer and continued walking toward the apartment with Nicholson following.

*The apartment sweep and search*

As it turned out, Hubbard was the passenger Nicholson saw. He came out of the apartment to talk to the officer and acknowledged he lived there.

Nicholson later testified she was about 2 feet from the front door when Hubbard exited. She further testified she "smelled a strong odor of raw marijuana emanating from the apartment." The officer questioned Irone and Hubbard about the smell. Hubbard denied smelling anything and said his lawyer told him humans cannot detect a marijuana odor.

The front window blinds to the apartment were raised about a foot above the sill, allowing Nicholson to see inside. The officer saw five to seven people in the apartment. She testified she could only look for a few seconds before Hubbard went back inside and shut the blinds. As Hubbard reentered, Nicholson again smelled raw marijuana. Around this time, additional police officers arrived.

The officers decided to apply for a warrant to search the apartment. They ordered everyone to leave. No one was searched as they left. The officers testified they did not smell marijuana on anyone as they were leaving.

Three officers, including Nicholson, did a security sweep to make sure no one remained in the apartment. Nicholson testified the sweep was to ensure no one could destroy evidence or pose a threat to the officers. She testified the sweep was limited to places where a person could hide. The officers observed drug paraphernalia, a handgun, and a locked safe in a closet in Hubbard's room.

Nicholson applied for the search warrant, which was granted. During the warrant's execution, officers pried open the safe and found 25.07 grams of raw marijuana inside a Tupperware container. The officers also found a small amount of marijuana on a partially burnt cigarillo in the living room and several bongs, which were clean and had no marijuana residue. The State charged Hubbard with one count of possession of marijuana and one count of possession of drug paraphernalia, both class A nonperson misdemeanors.

*The suppression motion*

Hubbard filed a motion to suppress the evidence from the apartment. He argued the officers' initial sweep was an illegal search that invalidated the subsequent warrant.

5

He argued the smell of marijuana detected by an officer does not by itself provide the probable cause for a search. He also contended Nicholson lied about smelling raw marijuana or possibly spoke with reckless disregard for the truth. Finally, Hubbard claimed there was no factual basis for the protective sweep prior to obtaining the search warrant.

At a hearing on the suppression motion, Nicholson and Lawrence Police Officer Ronald Ivener testified. Both described noticing the strong marijuana smell. Nicholson said she "smelled a strong odor of raw marijuana emanating from the apartment." Ivener testified that when the door opened and closed, he could identify "the potent smell of raw marijuana emitting from inside the apartment." He also said he smelled a "mixture of both" raw and burnt marijuana during the sweep.

Hubbard contradicted the officers in his testimony. He said he did not run into his apartment, but merely "power-walked" because he was having a party and wanted everyone to quiet down since a police car was in the parking lot. He claimed there was no marijuana smell, only cigarette smoke and incense. Hubbard denied Nicholson was 2 feet from the front door when she claimed to smell raw marijuana, insisting she was 6 or 7 feet away. He contended Nicholson fabricated smelling marijuana after he became angry with her because he believed the officer racially profiled him by assuming he was Irone's brother with the active arrest warrant.

The suppression hearing transcript reflects the State offered Nicholson's probable cause affidavit into evidence and that the district court admitted it. But Hubbard did not include that affidavit in the record on appeal.

Nicholson testified officers found raw marijuana in a safe in Hubbard's bedroom closet and burnt marijuana in the living room while executing the warrant. She also said

6

the officers observed items of "evidentiary value," including "bongs and pipes sitting on the window sill" of Hubbard's bedroom, during the initial sweep.

The district court denied the motion to suppress. Among its factual findings, the court concluded: (1) Nicholson had "detected the smell of raw marijuana 200 to 500 times and burnt marijuana 100 to 300 times" in her law enforcement training and professional experience; (2) when Hubbard came out of his apartment, closing the door behind him, both Nicholson and Ivener could smell what they identified as the odor of raw marijuana coming from the apartment; (3) Ivener testified the smell was "potent" and "overwhelming"; (4) Nicholson observed two bongs and six smoking pipes on a windowsill and found a gun under a bed and another bong and a safe in the closet all located in the back bedroom while conducting the security sweep; (5) Nicholson smelled raw marijuana during the sweep; and (6) a search warrant was requested by Nicholson, supported by affidavit, setting forth the evening's events, including the security sweep.

The court said it gave "no weight" to an academic study introduced by Hubbard to support his argument that the officers could not accurately identify the marijuana smell. The 2004 article from the Smell and Taste Center, University of Pennsylvania School of Medicine, is entitled: "Marijuana Odor Perception: Studies Modeled from Probable Cause Cases." Hubbard argued it cast serious doubt about whether humans can accurately identify marijuana based on smell, but the court discredited the study's value. The court determined the study's research parameters did not accurately compare to the facts in Hubbard's case. The court noted the article limited its findings to suggest there is "no convincing evidence that *lay persons* could reliably detect the marijuana odor *under the test conditions*." But, the court observed, the article's authors admitted training could improve detection performance.

7

The district court relied on *State v. MacDonald*, 253 Kan. 320, 856 P.2d 116 (1993), and *State v. Riley*, No. 93,127, 2006 WL 90089 (Kan. App. 2006) (unpublished opinion), in concluding the odor of marijuana coming from the apartment supplied probable cause "to seek and obtain a search warrant." The court also noted Nicholson included observations in the warrant affidavit about drug paraphernalia during the protective sweep, when stating: "The strong odor of raw marijuana coming from the residence, along with the observation of drug paraphernalia in the apartment gave probable cause to the officers to obtain a search warrant."

Hubbard moved for reconsideration. He argued when the officers testified about smelling marijuana, they were experts under K.S.A. 2017 Supp. 60-456, so their testimony would only be admissible after demonstrating the reliability of their methods—or, in this case, their ability to identify marijuana by smell. The court denied reconsideration and ruled Nicholson testified as a lay person. The court reasoned:

> "She's not an expert in the field of odors. She's not an expert in marijuana, but she does have training. And there are numerous cases that allow for officers to testify based on their individual personal observations and their training just to become a police officer, and she's testified to that, and this court is aware of that training. I find her training was sufficient. It goes more to the weight that her testimony gives and not the admissibility of it."

After a bench trial, the court adopted its factual findings set out in its initial ruling on the suppression motion and made additional findings that both Nicholson and Ivener identified the marijuana odor, that the officers discovered drug paraphernalia while conducting a sweep prior to obtaining the search warrant, and that the drug paraphernalia was consistent with personal drug use. Relying on these findings the court convicted Hubbard on both counts.

The court sentenced Hubbard to two 12-month jail sentences and granted probation. Hubbard appealed.

*The Court of Appeals decision*

On appeal, Hubbard argued the suppression motion should have been granted because the officers' warrantless entry into his residence, ostensibly for officer safety and to prevent evidence destruction, violated the Fourth and Fourteenth Amendments to the United States Constitution and § 18 of the Kansas Constitution Bill of Rights. The panel declined to consider the § 18 claim because Hubbard only mentioned it once and did not explain its relevance. It also noted § 15 prohibits unreasonable searches and seizures, not § 18. *Hubbard*, 2016 WL 1614177, at *4.

The State argued probable cause existed for the search warrant based on the officers detecting the raw marijuana odor originating from Hubbard's apartment, even if the protective sweep was not reasonable. Moreover, the sweep was reasonable under the probable cause plus exigent circumstances exception to the warrant requirement, the State contended, because officer safety and the possibility for evidence destruction were exigent circumstances justifying warrantless entry. It also argued even if the officers lacked probable cause for the warrant, the evidence seized from Hubbard's bedroom remained admissible under the good-faith exception since the officers applied for a warrant before attempting the search. 2016 WL 1614177, at *4.

The panel held the officer safety justification was inapplicable because it is limited to warrantless sweeps incident to a lawful arrest, noting the sweep here occurred prior to Hubbard's arrest. The panel also held the officers failed to articulate specific facts that reasonably warranted a belief that anyone in Hubbard's apartment posed a danger to the officers or others. 2016 WL 1614177, at *5.

9

But the panel agreed with the State that the sweep was justified by the officers' perceived need to preserve evidence. It noted this need can only supply exigent circumstances justifying a warrantless search if there is probable cause to believe a crime has been committed and that evidence may be found in a specific place. 2016 WL 1614177, at *5 (citing *State v. Ibarra*, 282 Kan. 530, 544, 147 P.3d 842 [2006]). And the panel held the smell of marijuana provided probable cause to believe "the crime of possession of marijuana had been committed and that evidence of that crime might be found in Hubbard's apartment." 2016 WL 1614177, at *5-7 (comparing *State v. MacDonald*, 253 Kan. 320, 856 P.2d 116 [1993], with *Ibarra*, 282 Kan. 530, and *State v. Riley*, No. 93,127, 2006 WL 90089 [Kan. App. 2006] [unpublished opinion]).

While acknowledging this court had not yet addressed whether marijuana odor alone is sufficient to find probable cause to justify the warrantless search of a residence, the panel concluded probable cause based upon the strong odor of marijuana detected by the two officers justified the warrantless entry "at least for the limited purpose of preventing the destruction of evidence until a search warrant could be obtained." 2016 WL 1614177, at *7.

In so deciding, it distinguished *State v. Huff*, 278 Kan. 214, 92 P.3d 604 (2004), from Hubbard's case. 2016 WL 1614177, at *7. Unlike *Huff*, the panel noted, in which "the officers heard no noise to indicate that there were other occupants," Nicholson and Ivener knew other people were inside the apartment. *Hubbard*, 2016 WL 1614177, at *7. Additionally, the panel viewed *Huff* as not particularly helpful to Hubbard's case because *Huff* addressed "whether there were exigent circumstances to justify a search or entry into a private residence to *effectuate a warrantless arrest*." 2016 WL 1614177, at *8.

10

Instead, the panel looked to *State v. Fewell*, 286 Kan. 370, 384-85, 184 P.3d 903 (2008), and noted exigent circumstances involving the threat of destruction of evidence exist when ""'the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband. In each case, the particular facts must be considered."'" 2016 WL 1614177, at *9. The panel then quoted the factors articulated in *State v. Dugan*, 47 Kan. App. 2d 582, 276 P.3d 819 (2012), which was also an evidence-protection case:

"'(1) the time needed to secure a search warrant; (2) the reasonableness of the officers' belief the evidence may be immediately lost; (3) potential danger to the officers guarding the site while awaiting a warrant; (4) whether those persons with possession of the evidence are aware of the officers' presence; and (5) the ease with which the evidence might be destroyed or hidden. [Citations omitted.]'" 2016 WL 1614177, at *9.

Next, the panel discarded Hubbard's argument that material omissions in the affidavit invalidated the warrant because Hubbard failed to include that affidavit in the record on appeal. 2016 WL 1614177, at *11.

Finally, the panel addressed Hubbard's contention that Nicholson's testimony should be deemed expert testimony and ruled inadmissible because it was not sufficiently reliable. The panel concluded Nicholson's testimony was governed by K.S.A. 60-419:

"Under that statute, a witness may testify on a relevant or material matter as long as there is evidence that he or she 'has personal knowledge thereof, or experience, training or education if such be required. Such evidence may be by the testimony of the witness himself or herself.' Nicholson's testimony that she smelled raw marijuana was based on her personal knowledge of the odor of raw marijuana, and she testified at the suppression hearing about the training and experience that allowed her to recognize the odor of raw marijuana. Thus, the district court did not err in admitting the testimony." 2016 WL 1614177, at *12.

11

The panel affirmed the district court's decisions but said it "stopp[ed] short of finding that the odor of marijuana would have provided probable cause for the officers to conduct a detailed search of Hubbard's apartment for illicit drugs, including drawers and containers within the apartment" because that detailed search occurred after the warrant's issuance. 2016 WL 1614177, at *7.

This court granted Hubbard's petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review). We address the issues subject to our review in the order the panel considered them.

We further note Hubbard's attempt to resurrect on review his state constitutional claim by now referencing § 15 of the Kansas Constitution, rather than § 18. But he did not seek review of the panel's rejection of that issue, so we ignore this question as the panel did. See *State v. Johnson*, 297 Kan. 210, 226-28, 301 P.3d 287 (2013) (declining to address issue not raised or fairly included in petition because whether review would have been granted on issue was speculative and the State was deprived of opportunity to challenge propriety of reviewing it).

MOTION TO SUPPRESS

The State did not seek review of the panel's holding that officer safety did not justify the initial sweep of Hubbard's apartment, so that much is resolved. See *State v. McBride*, 307 Kan. 60, 62, 405 P.3d 1196 (2017). Our focus is on Hubbard's challenge to the panel's ruling that the potential loss of evidence exception permitted officers to empty the apartment and sweep the premises looking for stragglers.

12

Hubbard argues the officers' claims of smelling marijuana at the front door did not properly support the search. Or, as he states the controversy to us: "No Kansas Supreme Court case has held that odor alone of marijuana can provide probable cause to search a residence." This court previously has recognized the law in Kansas is unsettled whether the smell of marijuana alone supplies probable cause to search a residence. *Huff*, 278 Kan. at 222.

*Standard of review*

Faced with a motion to suppress evidence, the State bears the burden of proving the search and seizure were lawful. K.S.A. 22-3216(2); see also *State v. Gray*, 306 Kan. 1287, 1302, 403 P.3d 1220 (2017). As to the trial court's suppression order,

> "'an appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed de novo. . . . Substantial evidence refers to evidence that a reasonable person could accept as being adequate to support a conclusion. . . . This court does not reweigh the evidence, assess the credibility of the witnesses, or resolve evidentiary conflicts. [Citations omitted.]' *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017)." *State v. Brown*, 306 Kan. 1145, 1151, 401 P.3d 611 (2017).

*Discussion*

We begin our consideration mindful of the facts as determined by the district court after an evidentiary hearing. Two officers testified they smelled marijuana. Nicholson estimated she was about 2 feet from the apartment door, which was opened and closed twice in her presence. Ivener testified the marijuana smell was "strong" and "potent." The district court found both officers credible and experienced at identifying the smell of marijuana. It specifically noted Nicholson "detected the smell of raw marijuana 200 to

13

500 times and burnt marijuana 100 to 300 times." Substantial competent evidence supports these factual findings. And to the extent Hubbard challenged the officers' credibility, those determinations are not subject to our review. See *State v. Schoonover*, 281 Kan. 453, 517, 133 P.3d 48 (2006) (holding trial court's decision to credit magistrate's testimony that prior contact with defendant did not affect issuance of warrant was not subject to challenge on appeal from adverse ruling on suppression motion).

The ultimate question is whether Hubbard was entitled to have the evidence obtained during the search warrant execution suppressed because of what he believes was the officers' unlawful, warrantless entry into his home. In the district court, Hubbard sought suppression of the evidence seized pursuant to the search warrant, noting the officers located "many of the items seized" during the initial warrantless entry. In answering this question, we do not reach whether the search warrant itself was valid because the record on appeal is incomplete for that purpose. Rather, we agree with the lower courts that the facts as found by the district court established probable cause to believe contraband would be found inside the apartment. We further hold an exigent circumstance—the need to prevent evidence destruction—supplied an exception to the warrant requirement that permitted the officers to search the apartment for individuals who might have been remaining within it. And because the sweep was lawful, it cannot supply a basis for challenging the warrant.

The Fourth Amendment to the United States Constitution guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." And the judicially created exclusionary rule prevents evidence obtained through an illegal search or seizure from being admitted at trial. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). This exclusionary rule "safeguards Fourth Amendment rights by preventing the use of unconstitutionally obtained evidence in criminal proceedings against victims of illegal

searches." *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014). For the exclusionary rule to apply, there first must be a constitutional violation.

When the affidavit supporting a search warrant is challenged, a reviewing court assesses whether that affidavit supplied the issuing judge with a substantial basis for finding probable cause. *State v. Fisher*, 283 Kan. 272, 300, 154 P.3d 455 (2007). And when the affidavit contains both lawfully and unlawfully obtained information, the court asks whether the affidavit supplied a substantial basis for finding probable cause absent the unlawfully obtained information. 283 Kan. at 303-04. We have previously described this as "probable cause at least once removed," i.e., "deference is built into . . . the 'substantial basis' standard." *State v. Hicks*, 282 Kan. 599, 613, 147 P.3d 1076 (2006). If a substantial basis existed for finding probable cause, the warrant was valid and evidence obtained pursuant to it will not be suppressed. See *Fisher*, 283 Kan. at 309. But see *State v. Epperson*, 237 Kan. 707, 718-19, 703 P.2d 761 (1985) (evidence discovered as result of Fourth Amendment violation subject to exclusion as fruit of the poisonous tree).

In addition, when law enforcement reasonably relies on a search warrant later found to lack probable cause, the exclusionary rule does not bar the evidence's use unless one of four exceptions applies:

> "(1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized." *State v. Hoeck*, 284 Kan. 441, 464, 163 P.3d 252 (2007).

For warrantless searches, the principles are different. The Fourth Amendment prohibits unreasonable searches and seizures, and warrantless searches are per se

unreasonable unless they fall within an exception to the warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014) ("[A] warrantless entry into a private dwelling by law enforcement officers is considered unreasonable and invalid unless it falls within a recognized exception to the warrant requirement."). One such exception—the one with which we are presently concerned—is when officers possess both probable cause for a search and exigent circumstances justifying that it be carried out immediately. See *State v. Ibarra*, 282 Kan. 530, 536, 147 P.3d 842 (2006).

The principles applicable to warrantless searches might be relevant to determining a search warrant's validity because, if information obtained through a warrantless search is included in an affidavit, whether that information was lawfully or unlawfully obtained affects the analysis concerning the warrant's validity. And because this case involves both a warrant and a warrantless search, the inevitable discovery doctrine—an exception to the exclusionary rule under which "the prosecution may use evidence it obtained illegally but would have obtained legally in any event"—is also relevant to fully resolve the Fourth Amendment issues this fact pattern raises. *State v. Ackward*, 281 Kan. 2, 18, 128 P.3d 382 (2006).

Within this context, if the warrant was valid, the exclusionary rule cannot apply in Hubbard's case because the warrant resulted in the marijuana being discovered and the paraphernalia's discovery was inevitable. But even if the warrantless sweep was unlawful, the warrant might still have been valid if the affidavit provided a substantial basis to find probable cause—even after excluding information learned during the warrantless sweep. Further, even if the warrant was invalid, exclusion might not be required if law enforcement reasonably relied on it, unless one of the four good-faith exceptions applies.

Unfortunately, our ability to fully answer this array of suppression questions is stymied by Hubbard's failure to include the search warrant affidavit in the appellate

16

record. See *State v. McCullough*, 293 Kan. 970, 999, 270 P.3d 1142 (2012) ("The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error."). The panel observed this problem as well. *Hubbard*, 2016 WL 1614177, at *11.

We are uncertain what information was provided in the affidavit, though the record indicates it contained at least Nicholson's belief she smelled raw marijuana and likely her observations about drug paraphernalia during the protective sweep. So even assuming some information was unlawfully obtained, without inspecting the remaining circumstances detailed in the affidavit it is impossible for us to rule the district court erred by refusing to suppress the evidence due to a defect in the search warrant affidavit.

But we need not dwell further on this procedural default because we agree with the panel that the probable cause plus exigent circumstances exception permitted the warrantless sweep. Therefore, to the extent the paraphernalia evidence and the search warrant were fruits of a warrantless search, the sweep was not illegal and the challenged evidence is not subject to exclusion.

*Marijuana odor supplied probable cause*

This court has provided the following definition for probable cause:

"'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

17

> "'When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004) (quoting *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2-3, 83 P.3d 794 [2004]).

Cast more pointedly in terms of probable cause for a search, probable cause "can be established if the totality of the circumstances indicates there is a fair probability that the place to be searched contains contraband or evidence of a crime." *State v. Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 2, 272 P.3d 34 (2012) (warrantless vehicle search); see also *Hicks*, 282 Kan. at 603 (noting magistrate judge considering whether to issue search warrant charged with making "''a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of [any] persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"'") (quoting *State v. Gilbert*, 256 Kan. 419, 421, 886 P.2d 365 [1994]).

In *State v. MacDonald*, 253 Kan. 320, 856 P.2d 116 (1993), the court held that the odor of marijuana detected by an officer trained and experienced in identifying the smell provided probable cause to search a vehicle. 235 Kan. at 325. The officer observed the smell during a checklane stop when the driver's window was open. The *MacDonald* court held the officer had probable cause to search the car, by noting that "[a] majority of courts have found that marijuana odor detected by an experienced law enforcement officer can provide sufficient probable cause to support a warrantless search." 253 Kan. at 325. Similarly, Nicholson and Ivener smelled what they identified as the odor of raw marijuana coming from the apartment when Hubbard twice opened the front door in their presence.

18

Hubbard's arguments on appeal suggest the rule from *MacDonald* should not apply when the place to be searched is a residence and that the odor of marijuana cannot supply a basis for probable cause in that context. He bases this latter contention on the journal article he provided to the district court. We disagree with Hubbard. The officer's ability to discern the smell of marijuana was an issue of fact appropriately resolved by the district court against Hubbard based on the evidence from the suppression hearing.

The United States Supreme Court has addressed the relationship between odors and probable cause. In *Taylor v. United States*, 286 U.S. 1, 52 S. Ct. 466, 76 L. Ed. 951 (1932), law enforcement agents during Prohibition smelled whiskey coming from a garage while conducting a late-night investigation into complaints about the structure. They looked through a small opening and saw many cardboard cases, which they presumed contained illegal contraband. They searched the garage without a warrant and found illegal alcohol. The Court reversed the defendant's conviction primarily because the officers failed to obtain a search warrant despite ample opportunity to do so. 286 U.S. at 6. But in so holding, the Court stated "[p]rohibition officers *may rely on a distinctive odor as a physical fact indicative of possible crime*; but its presence alone does not strip the owner of a building of constitutional guaranties (Const. Amend. 4) against unreasonable search." (Emphasis added.) 286 U.S. at 6.

Sixteen years later, the Court decided *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948), in which experienced narcotics officers searched a hotel room after recognizing the "distinctive and unmistakable" smell of opium. 333 U.S. at 12. The defendant relied on *Taylor* for the proposition that odors cannot be evidence sufficient to constitute probable grounds for any search. But the Court rejected this and clarified that *Taylor* merely held

19

"odors alone do not authorize a search without warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character." 333 U.S. at 13.

The *Johnson* Court explained that evidence may support a neutral magistrate in granting a search warrant, but allowing warrantless searches based on the same evidence "would reduce the [Fourth] Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." 333 U.S. at 14. The Court noted, though, that "exceptional circumstances" may justify dispensing with the warrant requirement, including a suspect's flight likelihood; mobility of the area to be searched, e.g., a vehicle; and the threat of removal or destruction of evidence. 333 U.S. at 14-15.

Both *Taylor* and *Johnson* support the general proposition that sufficiently distinctive odors that betray illegal activity to those who would know the odor are enough to find probable cause for issuing a warrant. And *Johnson* suggests that when probable cause exists, an exigent circumstance such as removal or destruction of evidence may permit officers to bypass the warrant requirement entirely—justifying a warrantless search.

Other jurisdictions have weighed in on this and provide authority that the distinct smell of marijuana supplies probable cause under appropriate circumstances. See *United States v. Sifuentes*, 504 F.2d 845, 848 (4th Cir. 1974) (equating smelling marijuana with the plain view doctrine, stating "[t]hese facts [—seeing the boxes and smelling marijuana—] combined to place the contraband in plain view, that is, obvious to the senses"); *Mendez v. People*, 986 P.2d 275, 280-81 (Colo. 1999) ("In holding that probable cause existed in this case, we emphasize that the smell of burning marijuana is

20

sufficiently distinctive as to be readily identifiable to a trained police officer."); *People v. Baker*, 813 P.2d 331, 333 (Colo. 1991) ("[O]fficers had probable cause to believe a crime was being committed when they smelled burned marijuana."); *State v. Hughes*, 233 Wis. 2d 280, 291-92, 607 N.W.2d 621 (2000) ("When the strong smell of marijuana is in the air, there is a 'fair probability' that marijuana is present. This is common sense."); *United States v. Newton*, 463 Fed. Appx. 462, 466-67 (5th Cir. 2012) (unpublished opinion) (holding probable cause to obtain a search warrant sufficient based on the smell of marijuana coming from an apartment and the resident fleeing from the officers when he knocked on the door); see also *United States v. DeLeon*, 979 F.2d 761, 764-65 (9th Cir. 1992) (smell of growing marijuana alone did not provide probable cause because "there was no finding that [the person claiming to smell marijuana] was qualified to recognize the odor of growing marijuana, which doubtlessly differs from the odor of cured or burning marijuana").

In academic writings, LaFave notes:

"The Supreme Court was not off the mark in *Johnson* in saying that an odor may be 'evidence of the most persuasive character.' As the illegal substance cases illustrate, the sense of smell will often make more certain a finding of probable cause than the sense of sight. This, of course, is because there are some truly distinctive odors, while many objects commonly associated with the possession and use of illegal substances (e.g., a green plant, a grassy substance, a handrolled cigarette, pills, a pipe, a folded dollar bill, a plastic baggie, or a glassine envelope) may in fact be innocent." 2 LaFave, Search & Seizure § 3.6(b) (5th ed. 2012).

See also Sprow, *Wake Up and Smell the Contraband: Why Courts That Do Not Find Probable Cause Based on Odor Alone Are Wrong*, 42 Wm. & Mary L. Rev. 289 (2000).

21

Hubbard largely relies on *Huff*, in which the court assumed a skeptical view about the import of marijuana odor in determining probable cause. 278 Kan. at 221-22. The court rejected an argument that the facts constituted exigent circumstances to justify a warrantless apartment entry, as well as an alternative argument that the evidence should have been admitted under the inevitable discovery doctrine even without the probable-cause-plus-exigent-circumstances exception. *Huff*, 278 Kan. at 220-21. In that case, when officers responded to a citizen complaint about noise and a marijuana odor coming from the apartment, they smelled burnt marijuana when the resident exited to speak with them. The officers entered the apartment over the resident's objection and found defendant inside, along with another person who was holding a marijuana pipe and had methamphetamine in his pocket. The officers then obtained a search warrant, through which they discovered syringes, methamphetamine, and a slip of paper bearing defendant's name.

In dismissing the exigent circumstances argument, the *Huff* court reasoned that "[p]robable cause was weak, if it existed at all" and held there were no exigent circumstances because "[o]nce [the resident] came outside, the officers had no evidence that even one other person remained in the apartment" and "[t]he absence of evidence that someone remained inside also meant the officers had no reason to worry about evidence destruction." 278 Kan. at 221. The *Huff* court stated "few jurisdictions have held that the smell of marijuana emanating from a private residence alone is sufficient to establish probable cause to support a search warrant. [Citations omitted.] Generally something more than 'plain smell' is required." 278 Kan. at 221. The court cited as support *United States v. Padron*, 657 F. Supp. 840 (D. Del. 1987), which involved a vehicle search, as did the cases *Padron* cited as its support.

The *Hubbard* panel noted this distinction but found *MacDonald* persuasive nonetheless in context with other cases and the officers' testimony. *Hubbard*, 2016 WL

22

1614177, at *6-7. The panel cited *State v. Riley*, No. 93,127, 2006 WL 90089 (Kan. App. 2006) (unpublished opinion), in which two police officers arrived at Riley's home to investigate a complaint unrelated to the smell or use of marijuana. After entering with the homeowner's consent, they smelled a burnt marijuana odor and obtained a search warrant based on the odor. Relying on *MacDonald*, the *Riley* panel held "Kansas law establishes that such odor detected by an experienced law enforcement officer can provide sufficient probable cause to support a search." 2006 WL 90089, at *3.

The *Hubbard* panel also considered *State v. Ibarra,* 282 Kan. 530, 147 P.3d 842 (2006), in which the court held the odor of ether, standing alone, did not constitute probable cause to justify a vehicle's warrantless search. 282 Kan. at 543. The *Hubbard* panel observed that the *Ibarra* court "focused on the fact that ether is a legal substance and '[t]he strong odor of ether emanating from a house or vehicle is as consistent with lawful activity as it is with criminal activity.'" *Hubbard*, 2016 WL 1614177, at *6 (quoting *Ibarra*, 282 Kan. at 543). The panel noted marijuana is not a substance that may be legally possessed in Kansas, so its odor was inconsistent with lawful activity. 2016 WL 1614177, at *6.

Hubbard cites the same cases listed in *Huff* without supplying further analysis. But none explicitly rejects the position that smell alone is sufficient for probable cause. Rather, in each case, the court found probable cause relying on more than just smell because additional incriminating evidence was present. For example, in *United States v. Kerr*, 876 F.2d 1440, 1442-45 (9th Cir. 1989), the police relied on more than just smell, but the Ninth Circuit panel stated "[b]y far the most incriminating piece of evidence was the odor of marijuana emanating from Kerr's premises," even though the officer claimed to smell marijuana from more than 50 yards away. 876 F.2d at 1444. Citing to the Court's *Johnson* opinion, *Kerr* opined that even without additional evidence "the presence of the

23

odor of contraband may itself be sufficient to establish probable cause." *Kerr*, 876 F.2d at 1445.

We hold that the totality of the circumstances surrounding a law enforcement officer's detection of the smell of raw marijuana emanating from a residence can supply probable cause to believe the residence contains contraband or evidence of a crime. See *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017) (noting probable cause for search exists when totality of circumstances indicate fair probability location contains contraband or evidence of a crime, including all information in officer's possession, fair inferences from it, and any other relevant facts); *State v. Hicks*, 282 Kan. 599, 147 P.3d 1076 (2006). Such circumstances include, but are not limited to, proximity to the odor's source, reported strength of the odor, experience identifying the odor, elimination of other possible sources of the odor, and the number of witnesses testifying to the odor's presence. This is ultimately a case-by-case determination based on the circumstances. Not all cases relying on odor will have the same result.

We further hold the district court did not err when it concluded the officers had probable cause to believe contraband or evidence of a crime were in Hubbard's apartment. Both testified they detected raw marijuana odor. Nicholson testified she was only about 2 feet from Hubbard's front door when she smelled the odor coming from the apartment. Ivener also detected the odor and characterized it as "strong" and "potent." And the court accepted Nicholson's training and experience in detecting both raw and burnt marijuana in its ruling. As to Hubbard's concerns that the officers' sense of smell was skewed by bias, inaccuracies, or ill-intent, or unbelievable because the marijuana was discovered in a bedroom safe, those contentions were resolved by the district court's findings and its credibility determinations inherent in those findings.

*Threat of evidence destruction was an exigent circumstance*

To satisfy the second half of the exception for warrantless entry based on probable cause plus exigent circumstances, an exigent circumstance exists when there is "an objectively reasonable belief that an emergency situation exists." *State v. Campbell*, 297 Kan. 273, 280, 300 P.3d 72 (2013). On review, the State must rely on preventing the loss or destruction of evidence as its exigent circumstance because it did not cross-petition for review of the panel's rejection of its officer safety argument.

Exigent circumstances include situations in which the police reasonably determine, from the surrounding circumstances, that the evidence will be destroyed or concealed before a search warrant can be obtained. *State v. Hardyway*, 264 Kan. 451, 464-65, 958 P.2d 618 (1998). But this does not stretch to situations when only a mere possibility of that danger exists. *State v. Fewell*, 286 Kan. 370, 385, 184 P.3d 903 (2008).

In its review, the *Hubbard* panel looked to another Court of Appeals decision, *State v. Dugan,* 47 Kan. App. 2d 582, 605, 276 P.3d 819 (2012), which relied on authority from the Fourth and Fifth Circuit Courts of Appeals to more specifically outline the exigent circumstances factors applicable to a warrantless entry for evidence preservation. 2016 WL 1614177, at *9. The *Dugan* factors are:

> "(1) the time needed to secure a search warrant; (2) the reasonableness of the officers' belief the evidence may be immediately lost; (3) potential danger to the officers guarding the site while awaiting a warrant; (4) whether those persons with possession of the evidence are aware of the officers' presence; and (5) the ease with which the evidence might be destroyed or hidden. *United States v. Moses*, 540 F.3d 263, 270 (4th Cir. 2008); *United States v. Vega*, 221 F.3d 789, 800 (5th Cir. 2000)." *Dugan,* 47 Kan. App. 2d at 605.

25

We note those factors differ somewhat from *Huff*, which involved entry into a residence to make a warrantless arrest. The parties provide little guidance on whether the *Dugan* factors are preferable to those in *Huff*, but we perceive no substantive conflict. *Huff* expressly notes its listing is nonexclusive and recognizes the possibility of the evidence's loss or destruction as one of the factors to be considered. *Huff*, 278 Kan. at 220. We will apply the *Dugan* factors since they are more precisely tailored to Hubbard's case and consistent with *Huff*.

The panel focused on the second, fourth, and fifth *Dugan* factors. Under the second, the court highlighted Ivener's testimony that he did not know how many people had been in the apartment originally and whether they all left, so the officers could not know whether everyone was out. This weighs in the State's favor. Under the fourth factor, the panel noted there was evidence the occupants were aware of the officers' presence, so this also weighs in the State's favor because it demonstrates anyone staying behind would be alerted to the likelihood of an impending search.

The fifth factor is most persuasive in the State's favor because drugs are relatively easy to dispose of. 2016 WL 1614177, at *10. In *Dugan*, the incriminating evidence was collision damage on the defendant's vehicle. The court reasoned repairing the damage would have been time consuming and could not have been done inconspicuously, so the fifth factor weighed in the defendant's favor. 47 Kan. App. 2d at 605-06. In so deciding, the court compared hiding the vehicle damage with the "easily accomplished" task of "flushing contraband down the toilet." 47 Kan. App. 2d at 605.

We hold exigent circumstances existed to support the warrantless entry.

Hubbard next challenges the panel's conclusion that Nicholson's testimony about smelling raw marijuana was to a fact, rather than an opinion subject to the admissibility standards under K.S.A. 2015 Supp. 60-456. See *Hubbard*, 2016 WL 1614177, at *11-12. Although we agree with Hubbard that the officers were giving their opinions when they testified they smelled raw marijuana, we conclude the district court did not err by admitting the testimony as lay opinions.

*Standard of review*

Whether a witness—expert or layperson—is qualified to testify as to an opinion is to be determined by the trial court in the exercise of its discretion. *State v. Sasser*, 305 Kan. 1231, 1243, 391 P.3d 698 (2017) (citing *Hawkinson v. Bennett*, 265 Kan. 564, 592, 962 P.2d 445 [1998]). "'A trial court abuses its discretion when the act complained of "(1) is arbitrary, fanciful or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact."'" 305 Kan. at 1243.

*Discussion*

The panel held Nicholson's testimony was not an opinion but about a fact because, in its view, it was based on her personal knowledge of the odor of raw marijuana. *Hubbard*, 2016 WL 1614177, at *11-12. And the panel rejected Hubbard's argument that this fact testimony was incredible based on the journal article that he claims "disproves the idea that human beings can detect the odor of marijuana." 2016 WL 1614177, at *12. The panel noted the article itself did not reach that conclusion and reasoned it went only to the weight or credibility to give Nicholson's testimony.

We find some merit in Hubbard's contention that the panel erred by categorizing the officers' testimony as fact, rather than opinion. While the panel was correct when it noted the officers' testimony was based on their perceptions, this alone does not comprehensively capture the distinction—if it may be so captured—between fact and opinion testimony. Indeed, under K.S.A. 2017 Supp. 60-456,

"(a) If the witness is not testifying as an expert, the testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds: (1) Are *rationally based on the perception of the witness*; (2) are helpful to a clearer understanding of the testimony of the witness; and (3) are not based on scientific, technical or other specialized knowledge within the scope of subsection (b).

"(b) If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case." (Emphasis added.)

Surely, the officers' opinions that they smelled raw marijuana were rationally based on their perceptions because they observed an odor. The rub is whether their ability to identify marijuana odor—based on their testimony that this facility comes from their training and experience as police officers—propels their testimony into the realm of expert opinion.

Recently, our court wrestled with the distinction between lay and expert opinion testimony. In *Sasser*, a divided court held there was no abuse of discretion permitting a lay witness to testify about the estimated cost of repairing a motorcycle when (1) the witness possessed experience with motorcycle ownership and repairs, (2) his valuation of

28

the repairs was rationally based on his perception of what he saw, and (3) his opinion "was not based on information that was so scientific, technical, or specialized that it cried out for greater court control . . . under [K.S.A. 2017 Supp. 60-456]." 305 Kan. at 1246-47. But see *Sasser*, 205 Kan. at 1249 (Biles, J., concurring in part and dissenting in part) ("[A] forecast of future repair costs is not an opinion 'rationally based on the perception of the witness,' as required to make it admissible as lay opinion testimony . . . . Rather, it is based on specialized knowledge and, therefore, is impermissible as lay opinion testimony.").

In *Sasser*, the dissenting justices argued that, setting aside the witness' specialized knowledge of motorcycle repair, the witness was not in a better position to "'draw a legitimate conclusion from what he . . . perceived than the jury could from a narration of the details, the details being of such character that people generally are capable of understanding them and of arriving at a conclusion with respect thereto.'" 305 Kan. at 1249-50 (quoting 4 Gard & Casad, Kansas Law and Practice, Kan. C. Civ. Proc. Annot. § 60-456, p. 582 [5th ed. 2012]). And we are not alone in recognizing the difficulty drawing sharp boundaries between lay and expert opinion testimony. See, e.g., *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) ("A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences.").

In *Sasser*, the critical feature for the majority that made the testimony admissible as a lay opinion was that the special knowledge on which the motorcycle repair estimate was based was not "*so . . . specialized* that it cried out for greater court control." (Emphasis added.) *Sasser*, 305 Kan. at 1246. Similarly, "While smelling the odor of marihuana smoke may not be an event normally encountered in daily life, it requires limited, if any, expertise to identify." *Osbourn*, 92 S.W.3d at 537; see also *In re Ondrel M.*, 173 Md. App. 223, 918 A.2d 543 (2007) (holding officer's testimony that he

previously smelled marijuana was sufficient foundation for officer to testify he smelled marijuana inside a car, and testimony was a lay opinion because it was based on the officer's perception of the odor).

The same holds true for the officers' opinions that they smelled raw marijuana in Hubbard's case. Their specialized training on identifying that odor consisted of being exposed to it and being told what it was. Ivener said his training was at the police academy, and that "[t]hey did a pass-around of raw marijuana . . . so you can recognize the odor of it." Nicholson testified to similar training but added she had detected the smell of raw marijuana between 200 and 500 times.

We reserve some doubt this can be considered expert testimony based upon specialized knowledge. But in this instance we are confident it is within the realm of common human experience to smell something and subsequently be able to recognize that same odor again, e.g., alcohol, gasoline, freshly baked bread, recently cut grass, and so on. See *State v. Loudermilk*, 221 Kan. 157, 163, 557 P.2d 1229 (1976) ("Whether a small wound is a cut or a puncture and whether it is old or new, would not appear highly technical."). This qualifies it as lay opinion admissible under K.S.A. 2017 Supp. 60-456(a).

The dissent argues the "indistinct and far less recognizable odor of raw marijuana," as opposed to burnt marijuana, required the district court to treat the officers' testimony as expert opinions subject to the rigors of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). And it is critical of what it characterizes as our "casually intermittent factual and legal equation" of raw marijuana odor with odors the dissent believes are more clearly recognizable. Slip op. at 33. But the dissent does not offer any principled explanation of where the line may be drawn between an odor distinct enough to be the subject of lay opinion testimony and

30

one so indistinct to require expert testimony. Certainly the caselaw and the legal authorities discussed above have not suggested any discernible demarcation. We are not dealing with sommeliers trying to identify a white wine as a Loire Valley Chenin Blanc.

The dissent also suggests the officers were giving expert opinion testimony because of their prior exposure to raw marijuana from their police training and on-the-job experiences. We disagree. These officers did not learn how to smell at the police academy. Put another way,

> "There are certain fields where a witness may qualify as an expert based upon experience and training, however, use of the terms 'training' and 'experience' do not automatically make someone an expert. All opinions are formed by evaluating facts based on life experiences including education, background, training, occupation, etc. While [the police officer] may have had the potential to be qualified as an expert because she possessed knowledge, skill, experience and education, she was not testifying as an expert when she identified the marihuana. Rather, she was testifying based on her firsthand sensory experiences. [The police officer] herself smelled the odor that she perceived to be burnt marihuana. The fact that she had smelled marihuana before in *the course of her employment as a police officer does not necessarily make her an expert. And, again, even if she was an expert, that would not preclude her from offering a lay opinion about something she personally perceived.*" *In re Ondrel M.*, 173 Md. App. 223, 244-45, 918 A.2d 543 (2007).

Admittedly, this statement from *Ondrel* refers to burnt marijuana, not raw marijuana. But what forms the basis of the dissent's conclusion that raw marijuana is any less susceptible to lay witness identification based on prior exposure than burnt marijuana? Cf. *United States v. Downs*, 151 F.3d 1301, 1303 (10th Cir. 1998) ("In a case involving raw marijuana, this court has held that 'the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.'"); *State v. Cuong Phu Le*, 463 S.W.3d 872, 878 (Tex. Crim. App. 2015) (relying on officer's affidavit statements

31

that he smelled raw marijuana at residence's front door, on defendant's person, and in defendant's car in holding affidavit supplied probable cause for search warrant). The answer appears to be the dissent's own uncertainty about human ability to detect the smell and various conditions that might affect an ability. But there is nothing in the record, or in any authority cited by the dissent, to raise this beyond speculation.

And were we free to assess the facts ourselves, this information might have been useful in evaluating the officers' testimony. To be sure, Hubbard was free to introduce expert testimony to undermine the officers' credibility. See *United States v. Johnson*, 445 Fed. Appx. 311, 312 (2011) (unpublished opinion) (defense expert on the sense of smell testified it would be nearly impossible for officer to smell marijuana emitting from closed bag in trunk of car due to the packaging and prevailing weather conditions); *State v. Brinkley*, No. 1204003639, 2013 WL 1225869, at *5 (Del. Super. 2013) (unpublished opinion) (defense experts testified to undermine credibility of officer's testimony that he smelled marijuana as he approached defendant's vehicle). Hubbard did not do that. Hubbard was also free to present evidence or cross-examine to vigorously probe the inquiries raised by the dissent. See slip op. at 36-37. He did not do that either.

Hubbard's basis for attacking the officers' testimony was simply to include with his pleadings a scholarly article about smell testing and disparage their credibility. And, as discussed above, the district court found unpersuasive the conclusions reached in "the controlled environs of the scientific study on which the defendant urge[d] the court to rely." The dissent criticizes the district court's dismissal of this article for relying on "unknown variables" but really all the district court did was resolve the facts in the State's favor. As previously mentioned, on appeal we do not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts. *State v. Brown*, 306 Kan. 1145, 1151, 401 P.3d 611 (2017).

The district court did not abuse its discretion admitting the testimony.

Affirmed.

\* \* \*

BEIER, J., dissenting:  I respectfully dissent from the result and rationale of the majority.

I have several bothers—including but not limited to the majority's casually intermittent factual and legal equation of the distinct and recognizable odors of burnt marijuana, "alcohol, gasoline, freshly baked bread, recently cut grass, and so on" with the indistinct and far less recognizable odor of raw marijuana—but I will focus on only two of my bothers, either of which would be determinative and require a different outcome.

I would hold that the district judge applied the wrong legal standard in admitting and considering the testimony of the two law enforcement officers at the suppression hearing, treating their expert opinions on the source of the odor they perceived as facts. I would also hold that the judge erred in relying in part upon an absence of evidence from the State, which bore the burden of proving the lawfulness of the sweep of defendant Lawrence D. Hubbard's apartment, rather than evidence admitted by the State in arriving at her conclusion that the sweep was justified by the existence of probable cause and exigent circumstances. I discuss the errors in this order.

At the suppression hearing, the clear and uncontroverted testimony of both police officers was that they relied on their law enforcement training and experience to arrive at what the majority recognizes as their shared opinions that the odor of raw marijuana

33

emanating from the defendant's apartment existed and that it was "potent" or "strong," even "overwhelming."

In turn, the district judge explicitly relied on the officers' training and experience in her ruling on the motion to suppress. Her findings of fact included: "As part of her law enforcement training and while in her official capacity, Officer [Kimberley] Nicholson has detected the smell of raw marijuana 200 to 500 times and burnt MJ 100 to 300 times," and, "When the apartment door was opened and closed, the officers smelled what they identified as the odor of raw marijuana coming from the apartment. Officer [Ronald] Ivener testified the smell was 'potent' and 'overwhelming.'" She concluded that probable cause existed as a matter of law because of the odor of raw marijuana detected by the officers and gave no weight to a scholarly article admitted by the defense in part because "[t]his case involves officers who are trained in the detection of marijuana odors."

The district judge again relied on the officers' training when denying the defendant's motion for reconsideration of the suppression ruling. As the majority quotes her,

> "[Nicholson's] not an expert in the field of odors. She's not an expert in marijuana, but she does have training. And there are numerous cases that allow for officers to testify based on their individual personal observations and their training just to become a police officer, and she's testified to that, and this court is aware of that training. I find her training was sufficient. It goes more to the weight that her testimony gives and not the admissibility of it." Slip op. at 8.

The majority ultimately expresses uncertainty whether the officers' opinions qualified as lay or expert opinions, apparently defaulting to the former classification because the odor of burnt marijuana has been held to be distinct enough to be easily identified by a lay person by the Texas Court of Criminal Appeals, see *Osbourn v. State*,

92 S.W.3d 531, 537 (2002), and because it believes that the odor of raw marijuana can be recognized on any encounter subsequent to the officers' brief exposure to a small amount of the known substance for a few minutes in law enforcement training years before.

I do not share the majority's uncertainty about whether the officers' opinions qualified as expert testimony. The Court of Appeals panel erred by ruling that K.S.A. 60-419, which is merely a general witness statute that allows testimony based on "experience, training or education if such be required," was controlling. The majority improves only marginally upon the panel's analysis by recognizing that the more specific statute on opinion testimony, K.S.A. 2017 Supp. 60-456, controls; but it nevertheless errs by relying upon subsection (a) on lay opinion.

The controlling provision actually is subsection (b) of K.S.A. 2017 Supp. 60-456. The officers in this case were not testifying as mere lay persons. On the contrary, they specifically stated that the origin of their ability to smell and identify the source of their olfactory perception as raw marijuana stemmed from their brief exposure to the identified odor during their study at one or more police academies, followed by their experience with numerous cases in which they had successfully detected the substance. This uncontroverted dependency between the officers' training and experience on the one hand and the opinions they expressed on the other hand qualified their testimony about detecting the strong, potent, or overwhelming odor of raw marijuana as expert opinion testimony. As the author of today's majority opinion recently wrote in his concurring and dissenting opinion in *State v. Sasser*, 305 Kan. 1231, 1249, 391 P.3d 698 (2017) (Biles, J.): "[W]e should all understand that lay opinion testimony is not based on specialized knowledge."

As urged by the defense, the science, if any, behind the officers' apparently sincere belief in their professed ability to detect an odor of raw marijuana should have been

subjected to vetting under the rule of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), which is now codified in subsection (b). The officers' expert opinion testimony should have been admitted on the critical issue of the existence of probable cause at the time of the sweep of the apartment *only* if "(1) [t]he testimony [was] based on sufficient facts or data; (2) the testimony [was] the product of reliable principles and methods; and (3) the witness[es] ha[d] reliably applied the principles and methods to the facts of the case." K.S.A. 2017 Supp. 60-456(b). The district judge erred by failing to exercise her gatekeeping function under subsection (b).

The judge's second error was her explicit reliance on "unknown variables" in this case to disregard the scholarly article about odor testing admitted into evidence by the defense. The State cannot meet its burden to demonstrate the lawfulness of a search or seizure with an absence of evidence. See *State v. Cleverly*, 305 Kan. 598, 611, 385 P.3d 512 (2016). It must affirmatively muster evidence to support its position. Speculation is insufficient. The judge erred when she relied in part on what the State did not show in order to rule as she did.

This second error is in certain respects an artifact of the first. Had the district judge engaged in the gatekeeping function demanded by subsection (b) of K.S.A. 2017 Supp. 60-456, then many of the "unknown variables" she referenced in her denial of the suppression motion probably would not have been unknown at all.

In order to support the soundness of the science underlying the expert opinions it sought to admit into evidence on the probable cause question, the State would have been called upon to answer questions such as: How much raw marijuana must be present in order for a human to be able to detect its odor? How close must the person be to the raw marijuana in order to detect its odor? Does it make a difference whether the raw marijuana is in a closed container or a closed container within a closed container? How

long does the odor of raw marijuana linger? Does the temperature of the area in which the marijuana is detected matter? How about the humidity? Does the presence of an odor of burnt marijuana affect a person's ability to smell raw marijuana? How likely is it that confirmation bias from a search that turns up raw marijuana can pollute even the most honest perception or its later recollection or description? It nearly goes without saying that such information would not only have been useful in evaluating the soundness of the scientific underpinning of the officers' expert opinions but also, if the opinions were ultimately admitted, in determining the merits of the probable cause issue.

Given the district judge's legal errors described above, I would reverse Hubbard's convictions and vacate his sentence. This case should be remanded to the district court to conduct a new evaluation of the defense suppression motion under the correct governing law and any further necessary proceedings.

ROSEN, J., and JOHNSON, J., join in the foregoing dissent.