NOT DESIGNATED FOR PUBLICATION

No. 128,203

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

BLINDA KAY ALPERT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY MCCARTHY, judge. Oral argument held August 5, 2025. Opinion filed December 5, 2025. Reversed and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, and *Adam D. Stolte*, of Stolte Law, LLC, of Overland Park, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

ISHERWOOD, J.: The State of Kansas perfects this interlocutory appeal of the district court's order suppressing evidence resulting from a warrantless search of a vehicle incident to a traffic stop, which evidence led to charges against Blinda Kay Alpert for driving under the influence (DUI) and possession of drug paraphernalia. Alpert filed a three-tiered motion to suppress asking the district court to exclude the evidence acquired during the stop because (1) there was no reasonable suspicion to justify her further detention beyond the initial stop; (2) the sheriff's sergeant lacked probable cause to search

1

her vehicle; and (3) her arrest was not supported by probable cause. Concluding that the district court failed to enter a ruling for each challenge Alpert advanced, and that the incomplete order stymies our ability to analyze the ultimate issue of whether suppression was appropriate, we reverse the district court's decision and remand for further findings.

FACTUAL AND PROCEDURAL BACKGROUND

While operating a truck belonging to her employer, Alpert drove on and over the double yellow lines several times, leading Sergeant Ericka Simpson of the Johnson County Sheriff's Office to stop Alpert for failing to maintain a lane. Simpson recognized the odor of marijuana when she got to the window of the truck. Alpert initially denied any recent consumption of drugs or alcohol, and when Simpson asked if there was a reason the truck "kinda smells like marijuana," Alpert answered, "No. Shouldn't be." Alpert's appearance was rather unkempt, and she was exceptionally talkative, both of which Simpson processed as signs of possible impairment based on her training and experience. Accordingly, Simpson determined further investigation was warranted and asked Alpert to recite the alphabet starting with D and stopping at Q. Alpert complied and successfully completed the task. Next, Simpson instructed Alpert to count backwards from 88 to 69, which Alpert attempted to accomplish but continued on to 68 before pausing to ask Simpson whether she was supposed to stop at 67 or 66.

Alpert's erratic driving, anxious verbal rambling, and disheveled state, as well as her performance on the counting test and the odor of marijuana, led Simpson to believe there was probable cause to search the vehicle. Upon doing so, Simpson discovered small flakes of burnt marijuana on the passenger seat, remnants of rolling papers, an empty Altoids container bearing the odor of burnt marijuana, and several lighters yet no cigarettes. After Simpson completed the search, she informed Alpert of her findings. Alpert attempted to distance herself from the vehicle, reiterating that other people drove it and further stated that her only ingestion of marijuana that day was limited to "a puff"

2

that she took approximately four hours before the traffic stop—an assertion that deviated from her attestation at the outset of the stop that she had not consumed any drugs that day.

Based on all the information that was available to Simpson at that time, she opted to move forward with the investigation into Alpert's possible impairment by administering two additional field sobriety tests: a horizontal gaze nystagmus test, followed by a convergence test.

Simpson testified that eyes failing to converge, as Alpert's did, may be indicative of marijuana impairment specifically. Accordingly, Simpson requested that Alpert perform additional field sobriety tests, including the walk-and-turn and the one-leg stand. Based on Simpson's training and experience, Alpert's performance on the two tests provided further indication of impairment. Given the entirety of the information she had gleaned from her first observation of Alpert's erratic driving, through her interactions with Alpert during the course of the stop, and culminating in the final tests, Simpson concluded that Alpert was impaired beyond safe driving standards and placed her under arrest. Alpert subsequently consented to a blood test.

The State charged Alpert with DUI, possession of drug paraphernalia, and felony marijuana possession. At the preliminary hearing, the district court declined to bind Alpert over on the felony charge, recognizing that others may have driven the company truck and the State's evidence consisted of only a "couple of specks of marijuana" collected from the passenger seat.

Alpert moved to suppress all evidence. Although she conceded the validity of the initial traffic stop, Alpert argued that Simpson lacked reasonable suspicion to extend the stop to investigate for DUI or drug possession. She further challenged the integrity of the

3

probable cause Simpson relied on to search the vehicle and to ultimately place her under arrest.

The State responded that the totality of the circumstances gave rise to reasonable suspicion that justified the expansion of the traffic stop into a DUI investigation, and that Simpson's search of the truck was legally sound given the odor of marijuana she detected coming from the vehicle. Finally, the State maintained that Simpson had probable cause to arrest Alpert for DUI based on the collective information she obtained during the stop.

The district court conducted a hearing to resolve Alpert's motion. Simpson was the only witness called to testify and explained that at the time of the traffic stop, she was certified in Advanced Roadside Impaired Driving Enforcement, an extension of standard field sobriety training, and was also a certified Drug Recognition Expert. Simpson stated that failing to maintain a lane can be an indicator of impairment, therefore when Alpert's truck crossed the center line, she conducted a stop.

According to Simpson, not only did she smell the odor of marijuana emanating from the truck, but she also noticed that Alpert was "in a disarray" and "pretty talkative" while searching for her driver's license. Specifically, and unprompted, Alpert offered that she spent the day spraying trees as part of her landscaping job, had her appendix removed a few weeks earlier, and needed to check on her mom and animals. Simpson clarified that such rapid and nonresponsive talkativeness may signal impairment.

At the conclusion of the hearing, the district court stated, "[T]his is a close issue." In support of that sentiment, it noted that the truck was not Alpert's but rather a fleet truck owned by her employer and there was no evidence—such as a driving log—tending to show that she was the regular driver or otherwise drove the truck prior to the traffic stop. The district court highlighted the fact that Alpert passed the alphabet test, viewed the other field sobriety tests as nearly passed, and remarked on the small quantity of

4

marijuana Simpson recovered from the vehicle during her search. It acknowledged Simpson's testimony regarding the marijuana odor coming from the vehicle but noted that Alpert's person did not harbor the smell of marijuana. The district court concluded that based on the totality of the circumstances and the evidence before it, from both the preliminary and motion to suppression hearings, suppression of the evidence was warranted in Alpert's case.

The State now brings this interlocutory appeal.

LEGAL ANALYSIS

*The district court erred in granting Alpert's motion to suppress.*

When the State opposes a motion to suppress evidence, it bears the burden of proof that the search and any ultimate seizure were lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022). Kansas appellate courts conduct a two-part review of a district court's decision on a motion to suppress. First, we analyze the district court's factual findings to ensure they are supported by substantial, competent evidence. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024), *cert. denied* 145 S. Ct. 1449 (2025). To meet that threshold the evidence must be legal, relevant, and of the kind that a reasonable person would find sufficient to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). We are required to conduct that first analysis without reweighing evidence, assessing the credibility of witnesses, or resolving conflicts in the evidence. See 312 Kan. at 887. The ultimate legal conclusion the district court arrives at from an analysis of those facts is subject to de novo review on appeal. *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021).

Alpert's motion to suppress essentially raised three separate claims that arose as a product of her encounter with Sergeant Simpson:

(1) Sergeant Simpson lacked reasonable suspicion to extend the scope of the initial stop;

(2) a lack of probable cause to search Alpert's vehicle; and

(3) a lack of probable cause to place Alpert under arrest.

Following the submission of evidence and arguments of the parties, the district court observed that this presented a close case. It acknowledged that Sergeant Simpson detected the odor of marijuana coming from the vehicle upon making contact with Alpert but seemingly minimized the import of that evidence with its accompanying finding that no odor was evident on Alpert's person. The district court likewise recognized Simpson's belief that administration of the alphabet and counting tests was warranted but noted that Alpert passed one and was only off by one number on the other.

The State contends that the district court erred by granting Alpert's motion to suppress, reiterating its earlier stance that Simpson had reasonable suspicion to extend the traffic stop to initiate a DUI investigation and the odor of marijuana provided probable cause to search the truck. It further argues that the combination of the marijuana odor, the presence of marijuana in the vehicle, Alpert's admission to consumption of the drug, and her performance on the field sobriety tests provided Simpson with the requisite probable cause to place Alpert under arrest for DUI.

In response, Alpert maintains that the true source of the State's discontent is the manner in which the district court perceived the facts of the case, rather than any legal conclusions the judge arrived at following an analysis of those facts. And given that this court is prohibited from reweighing the evidence on appeal, the State has failed to establish a legitimate path toward relief.

Following a careful review of the record and analysis of the issue raised, we conclude the district court neglected to address Alpert's contention that the initial stop

was unlawfully extended, and that its ruling melded the issue of probable cause to search the vehicle with the probable cause required to place Alpert under arrest. Consequently, it is less than clear what analysis the district court employed at the hearing and the resulting effect is an ambiguous ruling. These uncertainties demand that Alpert's case be reversed and remanded for further proceedings.

*Reasonable suspicion to extend the stop*

The first issue in Alpert's motion to suppress consisted of the claim that Sergeant Simpson lacked independent reasonable suspicion to extend the duration of the initial traffic stop to investigate her possible drug impairment. Simpson testified at the suppression hearing that upon executing the stop, she approached the driver's side window and smelled the odor of marijuana coming from the vehicle as she spoke with Alpert. Additionally, she noticed that Alpert was somewhat disheveled and engaged in unprompted anxious chatter, sharing with Simpson that she recently underwent an appendectomy, that her mother was in poor health, and that she needed to tend to her animals. Simpson knew, from her training and experience, that those factors, taken in conjunction with the odor of marijuana, may be indicative of impairment, so she moved forward with a DUI investigation to either confirm or dispel her suspicion.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. See *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014) (The search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections.). The commission of a traffic infraction provides a law enforcement officer with an objectively valid reason for conducting a traffic stop. While a routine traffic stop constitutes a seizure for purposes of the Fourth Amendment, the initial seizure of a driver under those circumstances is not deemed unreasonable. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007).

When conducting a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation. *State v. Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011). Generally, once the driver has provided a valid license and proof that they are entitled to operate the car, however, they must be allowed to proceed on their way, without being subject to further delay for additional questioning by the officer. 292 Kan. at 816. Stated another way, when the inquiry necessary to satisfy the purpose of the initial detention is completed, the officer must allow the person to resume their travels unless the officer has a reasonable suspicion of criminal conduct. *State v. Gonzales*, 36 Kan. App. 2d 446, 455, 141 P.3d 501 (2006). That is, when the responses of a detainee and the varied circumstances surrounding the stop give rise to suspicions of a crime unrelated to the initial traffic offense, the officer is free to resolve those suspicions by tailoring their response to the demands of the situation. *State v. Morlock*, 289 Kan. 980, 995-96, 218 P.3d 801 (2009). Reasonable suspicion is more than a mere hunch. Rather, the officer must be able to articulate a particularized and objective basis for believing the person stopped is engaged in criminal activity. *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2018). To determine whether a minimum level of objective justification existed to warrant further investigative detention of the motorist, the court charged with analyzing the issue will do so through an assessment of the totality of the circumstances. See *State v. Pollman*, 286 Kan. 881, 897, 190 P.3d 234 (2008).

In Alpert's case, however, the district court never acknowledged, and therefore did not analyze, Alpert's contention that Sergeant Simpson lacked reasonable suspicion to believe that Alpert—apart from the initial traffic violation—had committed, was committing, or was about to commit a crime as required to justify further extension of her detention. See *Coleman*, 292 Kan. 813, Syl. ¶ 2. Accordingly, this court is unable to properly analyze the issue without weighing conflicting evidence, evaluating witness credibility, and redetermining questions of fact. Given the narrow scope of the review we are permitted to undertake, those are analytical endeavors that fall well beyond our reach.

8

*State v. Marx*, 289 Kan. 657, 660, 215 P.3d 601 (2009). We recognize that the State pursued this appeal yet did not also take the initiative to request a clear, comprehensive ruling when the district court announced its decision. Kansas courts have addressed the State's obligation to clarify ambiguous district court rulings. In *State v. Pottoroff*, 32 Kan. App. 2d 1161, 1162, 96 P.3d 280 (2004), the State acknowledged its failure to formally object *after* the district court announced its ruling but asserted that the prosecutor's argument in support of the presentence investigation report and its corresponding criminal history score was sufficient to make its position known. This court found that the better practice is for the State to make its objection known for the record when the district court renders its decision. Still, this court also recognized that the argument presented by the State in support of its position during the course of the hearing at issue may be sufficient to preserve the issue for jurisdictional purposes. 32 Kan. App. 2d at 1162. We find the arguments offered by the State at the suppression hearing were likewise sufficient to provide a clear understanding of its position.

As it currently stands, the district court did not pronounce a complete ruling for Alpert's motion to suppress. When the record on appeal fails to support a presumption that the district court found all the facts necessary to substantiate its judgment, this court will remand the case for additional findings and conclusions even though none of the parties voiced an objection to either the district court or this court. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

*Probable cause to search the truck*

The second claim that Alpert advanced in her motion to suppress challenged what she believed to be Sergeant Simpson's lack of the "[r]easonable suspicion . . . required to search a vehicle during a DUI investigation." Alpert asserted that because the knowledge Sergeant Simpson possessed in the early phase of the traffic stop fell short of the legal threshold, any "alleged contraband" seized as a product of the stop, "Alpert's admission"

9

to using marijuana, and any evidence obtained beyond that stage of the encounter must be suppressed. The district court's decision with respect to this particular claim was less than pointed as it simply acknowledged that "based upon the smell of marijuana, there was a search of the vehicle" and ultimately entered a global decision that "the totality of the circumstances in this case" compelled it to grant Alpert's motion to suppress.

The State's argument to our court aligns with its contentions before the district court—that Sergeant Simpson's detection of the odor of marijuana emanating from the vehicle provided her with the requisite probable cause to believe a crime had been committed and that evidence to support the same would be found in the truck. Before delving further into our analysis of the district court's decision, it is important to clarify the precise standard a law enforcement officer is required to meet prior to proceeding with a search.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *State v. Heim*, 312 Kan. 420, 422-23, 475 P.3d 1248 (2020). The recognized exceptions include: "'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.'" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012).

It is without question that Simpson did not seek a warrant, thus, the only applicable exception that would allow her to proceed with the investigation is probable cause plus exigent circumstances. A vehicle's mobility is considered an exigent circumstance for purposes of this exception. *State v. Doelz*, 309 Kan. 133, 143, 432 P.3d 669 (2019). As Alpert was clearly operating a vehicle at the time of the stop, the sole remaining component for purposes of the exception is whether probable cause existed.

The Kansas Supreme Court has provided the following definition for probable cause:

> "'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *State v. Hubbard*, 309 Kan. 22, 35, 430 P.3d 956 (2018) (quoting *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 [2004]).

Probable cause to search a vehicle can be established if the totality of the circumstances indicates there is a fair probability the vehicle contains contraband or evidence. *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017). When analyzing the totality of the circumstances, a court must consider the full spectrum of the officer's knowledge, fair inferences that can be drawn therefrom, and any other relevant facts, even if they are not necessarily admissible on the issue of guilt. *Ramirez*, 278 Kan. at 406 (quoting *State v. Abbott*, 277 Kan. 161, Syl. ¶ 3, 83 P.3d 794 [2004]).

One of the earliest cases to address the relationship between odors and probable cause was *Taylor v. United States*, 286 U.S. 1, 52 S. Ct. 466, 76 L. Ed. 951 (1932). That prohibition era case addressed an incident where law enforcement agents who were conducting a late night investigation into complaints about a particular garage detected the odor of whiskey wafting from the structure. The agents peered through a small opening and observed numerous cardboard cases that they presumed contained illegal contraband. A subsequent, warrantless search of the garage yielded illegal alcohol. The Court reversed Taylor's conviction primarily because the officers failed to obtain a search warrant despite ample opportunity to do so. 286 U.S. at 6. Yet, the Court stated: "Prohibition officers *may rely on a distinctive odor as a physical fact indicative of possible crime*; but its presence alone does not strip the owner of a building of

11

constitutional guaranties (Const. Amend. 4) against unreasonable search." (Emphasis added.) 286 U.S. at 6.

The issue arose again nearly two decades later in *Johnson v. United States*, 333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948), after experienced narcotics officers conducted a search of a hotel room when they recognized the "distinctive and unmistakable" smell of opium. 333 U.S. at 12. Johnson, citing *Taylor*, argued that odors alone do not provide sufficient evidence to fulfill the probable cause requirement for any search. The Court rejected Johnson's contention and clarified that *Taylor* merely held:

> "odors alone do not authorize a search without [a] warrant. If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character." 333 U.S. at 13.

The *Johnson* Court explained that evidence of this nature may provide a neutral magistrate with a firm foundation upon which to grant a search warrant, but to permit warrantless searches of a person's home based on the same evidence threatened to "reduce the [Fourth] Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." 333 U.S. at 14. The Court noted, however, that dispensing of the warrant requirement may be justified in those instances when an officer is confronted with "exceptional circumstances" such as the mobility of the area to be searched, e.g., a vehicle, and the threatened removal or destruction of evidence. 333 U.S. at 14-15.

The State argues that under the facts of this case the odor of marijuana alone satisfied Simpson's probable cause burden and it directs us to *State v. MacDonald*, 253 Kan. 320, 324-25, 856 P.2d 116 (1993), as support for its contention. The *MacDonald* rule advises that the odor of marijuana detected by an officer trained and experienced in

12

identifying that smell provides probable cause to search a vehicle. 253 Kan. at 325. In that case, the officer detected the odor during a checklane stop when the driver's window was open. The *MacDonald* court held the officer had probable cause to search the car, by noting that "[a] majority of courts have found that marijuana odor detected by an experienced law enforcement officer can provide sufficient probable cause to support a warrantless search." 253 Kan. at 325. In so holding, the Supreme Court made no finer distinctions between a small amount of the drug versus a larger quantity, between a faint or pungent odor, or between a fresh odor and a stale one. 253 Kan. at 325.

In the three decades since the issuance of *MacDonald* our Supreme Court has offered no indication that its continued longevity is on unsolid ground. See *State v. Crudo*, 318 Kan. 32, 541 P.3d 67 (2024); *State v. Hubbard*, 309 Kan. 22, 430 P.3d 956 (2018); *State v. Stevenson*, 299 Kan. 53, 321 P.3d 754 (2014); *State v. Fewell*, 286 Kan. 370, 184 P.3d 903 (2008). Additionally, the issuance of numerous opinions by this court continue to cast the analysis in a favorable light and arguably stands as an indication that the principle remains sound. See *State v. Hadley*, 55 Kan. App. 2d 141, 410 P.3d 140 (2017); *State v. Baez*, No. 126,589, 2024 WL 5182922 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 863 (2025); *State v. Gibson*, No. 123,064, 2021 WL 5027477 (Kan. App. 2021) (unpublished opinion); *State v. Martinez*, No. 110,273, 2014 WL 4627492 (Kan. App. 2014) (unpublished opinion); *State v. Rogers*, No. 105,233, 2012 WL 2924539 (Kan. App. 2012) (unpublished opinion); *State v. Crites*, No. 103,201, 2010 WL 5490737 (Kan. App. 2010) (unpublished opinion).

In sum, "an officer's detection of the odor of burned marijuana, standing alone, emanating from inside a motor vehicle is sufficient to establish probable cause for the warrantless search of the vehicle." *Hadley*, 55 Kan. App. 2d at 150. Thus, when the smell of marijuana in this case was detected by a law enforcement officer whose training and experience enabled her to recognize that odor as an unlawful substance, there was probable cause to conduct a lawful search of the vehicle Alpert was driving. To the extent

the district court adhered to a different legal framework when granting Alpert's suppression motion on this claim, it was erroneous to do so, and the ruling cannot be permitted to stand.

*Probable cause to arrest*

The final point Alpert relied upon in pursuit of the suppression of the evidence acquired against her was a claim that Sergeant Simpson lacked probable cause to place her under arrest. Again, the district court simply granted Alpert's motion in its entirety, finding that the totality of the circumstances illustrated that suppression of the evidence was appropriate. It failed to draw any distinction between probable cause to search the truck and probable cause for an arrest.

The difficulty created by this blended ruling is that it impairs our ability to conduct any meaningful review. While we have already concluded that the district court erred by employing a flawed legal rubric to suppress evidence obtained as a product of the automobile search, it remains uncertain how it would have ruled on Alpert's motion absent that error. It would logically follow that the district court would not consider evidence from the search when ruling on probable cause for the arrest, given that it suppressed the evidence from the search, yet the record reflects the district court seemingly did that very thing:

> "At that point, based upon the smell of marijuana, there was a search of the vehicle which found a flake of leafy substance in the passenger seat.
>
> "At the preliminary hearing, I recall, I have it in my notes that [the prosecutor] held it up to the light to find what was in the baggie that he handed to the sergeant for her testimony. But in any event, as the defense has pointed out, the Court did not bind over on that count number II [felony marijuana possession]. So Counts I [DUI] and III [possessing drug paraphernalia] remain at this point."

The district court repeatedly failed to clarify exactly how it analyzed the evidence for each issue. For example, the first two sobriety tests occurred prior to the search but Alpert's performance on those could affect the probable cause finding required for the search as well as that needed to support Alpert's arrest. While the district court accepted Sergeant Simpson's testimony that Alpert passed the alphabet test, it did not specify whether this finding affected the search, the arrest, or both. By suppressing all evidence without severing the issues, the district court implicitly found that Simpson lacked probable cause to arrest Alpert. We are not permitted to speculate whether the district court would have issued the same ruling had it not first undertaken a legally infirm analysis to determine that no probable cause existed to justify a search of the truck. See *State v. Douglas*, 309 Kan. 1000, 1003-04, 441 P.3d 1050 (2019). For these reasons, Alpert's case must be reversed and remanded with instructions to (1) apply the correct legal analysis to the determination of whether there was probable cause to search the vehicle; and (2) enter an order that clearly articulates a ruling for each of the three components upon which Alpert bases her claim that the evidence collected against her must be suppressed.

Reversed and remanded with directions.